# STEWART v. WYOMING CATTLE RANCHE COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

No. 52. Argued October 31, November 1, 1888. — Decided November 19, 1888.

Although silence as to a material fact is not necessarily, as matter of law, equivalent to a false representation, yet concealment or suppression by either party to a contract of sale, with intent to deceive, of a material fact which he is in good faith bound to disclose, is evidence of, and equivalent to, a false representation.

Instructions given to a jury upon their coming into court after they have retired to consider their verdict, and not excepted to at the time, cannot be reviewed on error, although counsel were absent when they were given.

Affidavits filed in support of a motion for a new trial are no part of the record on error, unless made so by bill of exceptions.

THE case is stated in the opinion of the court.

*Mr. John N. Baldwin* and *Mr. N. M. Hubbard* for plaintiff in error.

*Mr. William H. Swift* for defendant in error.

MR. JUSTICE GRAY delivered the opinion of the court.

The original action was brought by the Wyoming Cattle Ranche Company, a British corporation, having its place of business at Edinburgh in Scotland, against John T. Stewart, a citizen of Iowa. The petition contained two counts.

The first count alleged that in July, 1882, the defendant, owning a herd of cattle in Wyoming Territory, and horses going with that herd, and all branded with the same brand, and also 80 shorthorn bulls, and 700 head of mixed yearlings, offered to sell the same with other personal property for the sum of $400,000; and at the same time represented to the plaintiff and its agent, that there had already been branded 2800 calves as

the increase of the herd for the current season, and that the whole branding of calves and increase of the herd for that season would amount to 4000, and that, exclusive of the branding for that year, the herd consisted of 15,000 head of cattle, and that there were 150 horses running with it and branded with the same brand; that had the representation that 2800 calves had been branded been true, it was reasonable from that fact to estimate that the whole branding for that year would be 4000 head, and that the whole herd, exclusive of the increase for that year was 15,000 head; that the defendant, when he made these representations, knew that they were false and fraudulent, and made them for the purpose of deceiving the plaintiff and its agent, and of inducing the plaintiff to purchase the herd; and that the plaintiff, relying upon the representations, and believing them to be true, purchased the herd and paid the price.

The second count alleged that the defendant had failed to deliver the bulls and yearlings as agreed.

At the trial the following facts were proved: The defendant, being the owner of a ranche with such a herd of cattle, gave in writing to one Tait the option to purchase it and them at $400,000, and wrote a letter to Tait describing all the property, and gave him a power of attorney to sell it. He also wrote a letter describing the property to one Majors, a partner of Tait. A provisional agreement for the sale of the property, referring to a prospectus signed at the same time, was made by Tait with the plaintiff in Scotland, a condition of which was that a person to be appointed by the plaintiff should make a favorable report. One Clay was accordingly appointed, and went out to Wyoming and visited the ranche; certain books and schedules made by one Street, the superintendent of the ranche, were laid before him; and he and the defendant rode over the ranche together for several days.

Clay testified that, in the course of his interviews with the defendant, the latter made to him the false representations alleged in the petition, and requested him to rely on these representations, and not to make inquiries from the foreman and other persons; and that, relying on the representations,

he made a favorable report to the plaintiff, which thereupon completed the purchase. The plaintiff also introduced evidence tending to prove the other allegations in the petition. The defendant testified that he never made the representations alleged.

The jury returned a general verdict for the plaintiff in the sum of $55,000, upon which judgment was rendered, and the defendant sued out this writ of error.

No exception was taken to the judge's instructions to the jury upon the second count. The only exceptions contained in the bill of exceptions allowed by the judge, and relied on at the argument, were to the following instructions given to the jury in answer to the plaintiff's requests:

"14. I am asked by the plaintiff to give a number of instructions, a portion of which I give, and a portion of which I must necessarily decline to give. My attention is called to one matter, however, and as I cannot give the instruction as it is asked for, and as the matter it contains is, as I think, of the first importance, I will state my own views upon that particular point.

"I am asked to say to the jury, if they believe from the evidence that, while Clay was making the inspection, Stewart objected to Clay making inquiries about the number of calves branded, of the foremen and other men, and thereby prevented Clay from prosecuting inquiries which might have led to information that less than 2000 calves had been branded, the jury are instructed that such acts on the part of Stewart amount in law to misrepresentations.

"In reference to that point, I feel it my duty to say this to the jury, that if the testimony satisfies you that after all the documents in question that have been introduced in evidence here went into the hands of the home company in Scotland, where it had its office and where it usually transacted its business, if it was not satisfied with what appears in those papers, and if it did not see proper to base its judgment and action on the information that those papers contained, but nevertheless sent Clay to Wyoming to investigate the facts and circumstances connected with the transaction, to ascertain the number

of cattle and the number of horses and the condition of the ranche, and the number of calves that would probably be branded; if the company sent him there as an expert for the purpose of determining all those things for itself and for himself, and relied upon him, and he was to go upon the ranche himself, and exercise his own judgment, and ascertain from that, without reference to any conversation had with Stewart, then it would make no difference. But whilst he was in pursuit of the information for which he went there, Stewart would have no right to throw unreasonable obstacles in his way to prevent his procuring the information that he sought and that he desired. If the testimony satisfies you that when they did go there together, and whilst Clay was making efforts to procure the information which he did, and whilst he was in pursuit of it, and while he was on the right track, Stewart would have no right to throw him off the scent, so to speak, and prevent him, in any fraudulent and improper way, from procuring the information desired, and, if he did that, that itself is making, or equal to making, false and fraudulent representations for the purpose in question. But if Stewart did none of these things, then, of course, what is now said has no application.

"15. In determining whether Stewart made misrepresentations about the number of cattle, or the loss upon his herd, or the calf brand of 1882, the jury will take into consideration the documents made by Stewart prior to and upon the sale, namely, the power of attorney to Tait, the descriptive letter, the optional contract, letter to Majors, schedules made by Street, provisional agreement and prospectus, and his statements to Clay, if the jury finds he made any, upon Clay's inspection trip; and if the jury find that in any of these statements there were any material misrepresentations on which plaintiff relied, believing the same, which have resulted to the damage of the plaintiff, the plaintiff is entitled to recover for such damage.

"16. If the jury find from the evidence that Stewart purposely kept silent when he ought to have spoken and informed Clay of material facts, or find that by any language or acts

he intentionally misled Clay about the number of cattle in the herd, or the number of calves branded in the spring of 1882, or by any acts of expression or by silence consciously misled or deceived Clay, or permitted him to be misled or deceived, then the jury will be justified in finding that Stewart made material misrepresentations; and must find for the plaintiff, if the plaintiff believed and relied upon the representations made by the defendant."

The judge, at the beginning and end of his charge, stated to the jury the substance of the allegations in the petition as the only grounds for a recovery in this action; and, at the defendant's request, fully instructed them upon the general rules of law applicable to actions of this description, and gave, among others, the following instructions:

"5. In order to recover on the ground of false representations, such false representations must be shown to be of a then existing matter of fact material to the transaction; and no expression of opinion or judgment or estimation, not involving the assertion of an unconditional fact, can constitute actionable false representation, and in such case the jury must find for the defendant on the first count in the petition."

"8. In order to justify a recovery, it must be shown by proof that the plaintiff's agent relied upon the alleged false representations, and made them the ground and basis of his report, but that he was so circumstanced as to justify him in so relying upon and placing confidence in said representations; and if it appears that he had other knowledge, or had received other representations and statements, conflicting therewith, sufficient to raise reasonable doubts as to the correctness of such representations, then there can be no recovery on the first count."

The judge, of his own motion, further instructed the jury that they were to decide upon the comparative weight of the conflicting testimony of Clay and of the defendant, and added; "It seems to me that the first count must hinge upon that one point, because, if there was no statement made by Stewart to Clay with reference to the number of calves that were branded, during this trip of inspection of the ranche, then it seems to

me that the whole theory which underlies the claim of the plaintiff must be an erroneous one."

. . Taking all the instructions together, we are of opinion that they conform to the well settled law, and that there is no ground for supposing that the jury can have been misled by any of the instructions excepted to.

In an action of deceit, it is true that silence as to a material fact is not necessarily, as matter of law, equivalent to a false representation. But mere silence is quite different from concealment; *aliud est tacere, aliud celare;* a suppression of the truth may amount to a suggestion of falsehood; and if, with intent to deceive, either party to a contract of sale conceals or suppresses a material fact, which he is in good faith bound to disclose, this is evidence of and equivalent to a false representation, because the concealment or suppression is in effect a representation that what is disclosed is the whole truth. The gist of the action is fraudulently producing a false impression upon the mind of the other party; and if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment or suppression of material facts not equally within the knowledge or reach of the plaintiff.

The case of *Laidlaw* v. *Organ*, 2 Wheat. 178, is much in point. In an action by the buyer of tobacco against the sellers to recover possession of it, there was evidence that before the sale the buyer, upon being asked by Girault, one of the sellers, whether there was any news which was calculated to enhance its price or value, was silent, although he had received news, which the seller had not, of the Treaty of Ghent. The court below, "there being no evidence that the plaintiff had asserted or suggested anything to the said Girault, calculated to impose upon him with respect to the said news, and to induce him to think or believe that it did not exist," directed a verdict for the plaintiff. Upon a bill of exceptions to that direction, this court, in an opinion delivered by Chief Justice Marshall, held that while it could not be laid down, as a matter of law, that the intelligence of extrinsic circumstances which might influence the price of the commodity, and which

was exclusively within the knowledge of the vendee, ought to have been communicated by him to the vendor, yet, at the same time, each party must take care not to say or do anything tending to impose upon the other, and that the absolute instruction of the judge was erroneous, and the question whether any imposition was practised by the vendee upon the vendor ought to have been submitted to the jury.

The instructions excepted to in the case at bar clearly affirmed the same rule. The words and conduct relied on as amounting to false representations were those of the seller of a large herd of cattle ranging over an extensive territory, and related to the number of the herd itself, of which he had full knowledge, or means of information, not readily accessible to a purchaser coming from abroad; and the plaintiff introduced evidence tending to show that the defendant, while going over the ranche with the plaintiff's agent, made positive false representations as to the number of calves branded during the year, and also fraudulently prevented him from procuring other information as to the number of calves and consequently as to the number of cattle on the ranche.

In giving the fourteenth instruction, the judge expressly declined to say, that if the defendant prevented the plaintiff's agent from prosecuting inquiries which might have led to information that less than 2000 calves had been branded, such acts of the defendant would amount in law to misrepresentations; but on the contrary submitted to the jury the question whether the defendant fraudulently and improperly prevented the plaintiff's agent from procuring the information demanded; and only instructed them that, if he did, that was making, or equal to making, false and fraudulent representations for the purpose in question.

So the clear meaning of the sixteenth instruction is, that the jury were not authorized to find material misrepresentations by the defendant, unless he purposely kept silent as to material facts which it was his duty to disclose, or by language or acts purposely misled the plaintiff's agent about the number of cattle in the herd or the number of calves branded, or, by words or silence, knowingly misled or deceived him, or

knowingly permitted him to be misled or deceived, in regard to such material facts, and in one of these ways purposely produced a false impression upon his mind.

The defendant objects to the fifteenth instruction, that the judge submitted to the jury the question whether the defendant made misrepresentations about the number of cattle, and about the loss upon the herd, as well as about the calf brand of 1882. It is true that the principal matter upon which the testimony was conflicting was whether the defendant did make the representation that 2800 calves had been branded in that year. But the chief importance of that misrepresentation, if made, was that it went to show that the herd of cattle which produced the calves was less numerous than the defendant had represented; and the petition alleged that the defendant made false and fraudulent representations, both as to the number of calves branded and as to the number of the whole herd. So evidence of the loss of cattle by death, beyond what had been represented by the defendant, tended to show that the herd was less in number than he represented.

The remaining objection argued is to an instruction given by the judge to the jury in response to a question asked by them upon coming into court after they had retired to consider their verdict. It is a conclusive answer to this objection, that no exception was taken to this instruction at the time it was given, or before the verdict was returned. The fact that neither of the counsel was then present affords no excuse. Affidavits filed in support of a motion for a new trial are no part of the record on error, unless made so by bill of exceptions. The absence of counsel, while the court is in session, at any time between the impanelling of the jury and the return of the verdict, cannot limit the power and duty of the judge to instruct the jury in open court on the law of the case as occasion may require, nor dispense with the necessity of seasonably excepting to his rulings and instructions, nor give jurisdiction to a court of error to decide questions not appearing of record.

*Judgment affirmed.*