## LONE STAR IMMIGRATION CO. et al. v. JOHNSON.

(Circuit Court of Appeals, Seventh Circuit. January 3, 1922.)

No. 2895.

1. **Vendor and purchaser ⬯36(2)—Representations by vendor that land was "irrigable" means at reasonable cost.**

   A representation by a vendor that the land sold is "irrigable" agricultural land is to be understood as meaning that it can be irrigated at a reasonable cost, which would make its irrigation practicable for agricultural purposes.

2. **Vendor and purchaser ⬯37(4)—Rule of caveat emptor held not applicable, where land represented to be irrigable.**

   The rule of caveat emptor cannot be invoked by the vendor of a large tract of land against the purchaser, where he represented the tract to be irrigable agricultural land, whereas fully half of it could not be irrigated, except at a prohibitive cost, and where his agent, in showing the land to the purchaser, purposely took him only on the level part, from where, because of intervening brush, he could not see the broken character of the other part.

Appeal from the District Court of the United States for the Western District of Wisconsin.

Suit in equity by George A. Johnson against the Lone Star Immigration Company and others. Decree for complainant, and defendant appeals. Affirmed.

R. B. Graves, of Sparta, Wis., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge. Appellee owned farms in Monroe county, Wis., and made a contract with appellant corporation, nonresident of Wisconsin, for exchange of the Wisconsin farms for a large tract of land of the corporation in Cameron county, Tex. Pursuant to the contract, appellee gave deed and possession of the Wisconsin lands, and proceeded to Texas with the intention of taking possession of the land there. Upon arrival there he had the tract surveyed, and concluded he had been deceived and defrauded by appellant. He notified appellant that he rescinded the contract, demanding that the Wisconsin farms be reconveyed to him. Upon appellant's refusal, action was brought in Wisconsin, which resulted in a decree of cancellation of the contract, and reconveyance of the farms, and awarding appellee damages of $1,000.

The complaint was predicated upon allegation of appellant's fraudulent representation to appellee to induce him to enter into the contract; that the Texas tract was all level, and could readily and advantageously be irrigated and used for agriculture, its agricultural and commercial value consisting very largely in its irrigability; that in fact the land was traversed by ravines and gullies, and was not reasonably capable of irrigation, nor fit for agriculture, and had practically none of the advantageous qualities which had been represented to appellee; that appellant knew the representations of irrigability and agricultural

possibilities were false, but that appellee did not know of their falsity, and was by appellant's conduct prevented from finding it out.

It seems that appellee joined a land excursion party which appellant had organized for showing Texas lands to prospective buyers. The excursion was in charge of appellant's agents, who likewise had charge of the party on its reaching Texas, and conducted the tours for inspecting land. There was evidence tending to show that appellee was taken to what purported to be the land, and it was pointed out in a general way by appellant's agents as extending to what looked like a row of posts in the distance. As a matter of fact, the tract as surveyed extended far beyond the posts, and considerable of the land as surveyed was not visible, because of a thick growth of underbrush which obstructed the view, and beyond the posts and hidden by the underbrush it seems the tract was traversed by depressions and gullies, which according to evidence for appellee made about half the tract incapable of irrigation or agriculture and quite valueless. The representations of irrigability and fitness for agriculture, and their important bearing on the value of the land, were admitted; but it is claimed for appellant that the land was in fact irrigable, that no misrepresentations were made, and that in any event appellee was at the land, and had full opportunity to observe and know its character and possibilities, and as to him the rule "caveat emptor" applies; also that what was said on the subject of irrigability was not a representation of facts, but was at most an expression of opinion.

[1] There was evidence that fully half of the land could not be irrigated, except at prohibitive cost. It would not comply with the representation of irrigability that at unreasonable impracticable expense lands may be irrigated. Perhaps some Crœsus, at fabulous cost, might raise oranges in Greenland; but this would hardly justify representation of the orange-producing qualities of Greenland real estate. It is more than likely this land could be irrigated, even if to do so it was necessary to build 'a railroad through it, and haul water in tank cars, and distribute it by garden hose or sprinkling pots. But representations must be considered in the same sense in which the maker of them has reason to believe they will be understood by him to whom made. The agent who made the representation of irrigability well knew that thereby appellee would understand was meant at cost which would not be prohibitive. Such representations must be considered, not in the light of the remotely possible, but of the practicable. If a substantial part of the Texas land was not irrigable, except at prohibitive cost, it must be regarded as not being irrigable at all. That the court was warranted upon this record in finding material misrepresentation whereon appellee to his detriment relied sufficiently appears.

[2] Does the rule "caveat emptor" apply? Appellant's agents were probably familiar with the Texas lands which they were showing. They doubtless knew their topography, advantages, and disadvantages, and that appellee, a Northern farmer, was probably unacquainted with the peculiarities of Texas lands, and their adaptability for irrigation and agriculture. They knew, or assumed to know, the particular land for which appellee was bargaining, and in pointing it out they

must be held to the utmost of good faith in the employment of the superior knowledge they evidently possessed, not only of the tract itself, but also as to the fact of its being irrigable agricultural land. The gullies and depressions could not be seen from the various places on the tract to which these agents took appellee for the purpose of inspecting it. It was in their charge and under their direction that appellee inspected the tract, and from the evidence the court could properly find, as it did, that appellant's representatives so arranged and manipulated the inspection as to reveal to appellee the better parts of the tract, and conceal from him the undesirable portions. If in this they succeeded, appellant should not be permitted to hold onto the fruits of its deception, and escape restitution, on the plea that appellee ought not to have believed these agents and relied on what they told and showed him. Stewart v. Wyoming Ranch Co., 128 U. S. 383, 9 Sup. Ct. 101, 32 L. Ed. 439. What has been said will sufficiently dispose, also, of the contention that the alleged misrepresentations were not of facts, but only expressions of opinion.

The evidence was largely oral, and the trial court had the advantage of hearing and seeing the witnesses. We find in the record no misapplication of the law, and no reason for disturbing the court's conclusion as to the facts.

The decree of the District Court is affirmed.