**ESTATE OF John E. BRASWELL, by Josephine BRASWELL, Executrix**

v.

**The PEOPLE'S CREDIT UNION.**

**No. 90–251–Appeal.**

Supreme Court of Rhode Island.

Jan. 21, 1992.

Paul E. Burke, Newport, for plaintiff.

Laurent L. Rousseau, Newport, for defendant.

OPINION

FAY, Chief Justice.

This appeal arose from a Superior Court action brought on behalf of the plaintiff, the Estate of John E. Braswell, by the decedent's wife, Josephine Braswell, as executrix, whereby following a jury trial the defendant, The People's Credit Union, was held liable for negligent misrepresentation and the plaintiff was awarded $7,686. The defendant avers that the trial justice erred in denying the defendant's request to charge the jury on the theory of comparative negligence. For the reasons set forth herein, we deny the defendant's appeal and affirm the judgment of the Superior Court.

The plaintiff (Mr. Braswell) and his wife (Mrs. Braswell) were members of defendant institution for approximately fifty years. During that period they obtained approximately ten passbook loans from defendant. Each time, they received a document entitled "Certificate of Insurance" and were told by defendant's agent that the loan was insured.

On April 2, 1980, the Braswells obtained a passbook loan from defendant for the amount of $9,300. Thereafter, on March 28, 1981, Mr. Braswell expired. Believing the loan to be insured, Mrs. Braswell requested that defendant apply to the CUNA Mutual Insurance Company (CUNA) for payment of the balance of the loan from the time of her husband's death. Pursuant to that request, defendant submitted a claim to CUNA, which was ultimately denied because at the time of the loan application Mr. Braswell was not, in fact, eligible under the provisions set forth in the policy. Specifically, because Mr. Braswell was retired at the time of the loan application and because of his medical history, he was deemed ineligible for coverage. Thereafter, defendant informed Mrs. Braswell that CUNA had denied the claim and that payment would not be forthcoming.

On May 7, 1985, plaintiff filed a complaint in the Superior Court, alleging that defendant, through its agent loan officer, negligently misrepresented to the Braswells that the April 1980 loan was insured. A jury trial commenced on November 22, 1989.

Evidence was elicited at trial that at the loan closing defendant's loan officer gave Mr. Braswell the money, a copy of the promissory note, and a certificate of insurance. Mrs. Braswell testified that defendant's loan officer said "this is your Certificate of Insurance" as he handed the document to her husband. In addition she indicated that neither she nor her husband read the certificate of insurance at the time of the closing or thereafter. Furthermore, no representative of defendant ever requested that they read the document, nor did anyone inquire into the status of Mr. Braswell's employment or health. Lastly, relying upon their prior loan applications with defendant, in addition to having been told each time by other loan officers that they were insured loans, the Braswells assumed, she stated, that they were eligible for loan insurance and were properly covered with respect to the April 1980 loan.

Evidence from defendant's loan officer indicated that the normal procedure for processing loan applications is for an interviewer, who is usually the same person who closes the loan on behalf of defendant, to inquire into that applicant's history with respect to employment, retirement, and health. Relying upon the applicant's responses to these inquiries, the interviewer makes a determination of whether the applicant is eligible for, and will need the forms to apply for, loan insurance. The applicant's responses to the interviewer's inquiries are generally recorded on a loan-information card, and if loan insurance is applicable, the box entitled "Insurance" is checked. Regardless of whether loan insurance is required, the certificate of insurance is supplied to the applicant because it provides him or her with the guidelines for eligibility.

However, defendant's loan officer, who closed the April loan with the Braswells, did not conduct the initial interview with them; he merely acted during the closing. He indicated that because the insurance box on the loan-information card was unchecked, he assumed that Mr. Braswell was

not eligible for insurance and therefore refrained from inquiring into his employment, retirement, and medical history. Furthermore, he also admitted that although he did in fact have information with respect to Mr. Braswell's date of birth, he failed to take note of his age, which was sixty-one years at that time.

Normally if the borrower is eligible for loan insurance, then at the time of the closing defendant would supply to the borrower a statement of insurability, which the borrower in turn would submit to CUNA. However, in the instant case defendant's agent did not supply either of the Braswells with such a document, nor did the agent explain its contents to them at the time of the loan closing. It was not until after Mr. Braswell's death that defendant supplied the statement of insurability to Mrs. Braswell and at that time explained its contents.

At the close of the trial the trial justice instructed the jury on the theory of negligent misrepresentation. The defendant claimed that Mr. Braswell and his wife were contributorially negligent by failing to read the eligibility requirements contained in the certificate of insurance given to them at the closing. Had they in fact done so, defendant contends, they would have known that they were not eligible for loan insurance. Relying upon Mr. Braswell's negligence, defendant requested that an instruction on comparative negligence be given, but the request was denied.

The jury returned a verdict in favor of plaintiff, who was awarded the full amount of the $7,686 outstanding loan balance. Thereafter, on January 4, 1990, defendant filed this appeal, claiming that the trial justice erred in denying defendant's request to charge the jury with respect to comparative negligence.

■ General Laws 1956 (1985 Reenactment) § 9–20–4 provides for comparative negligence in causes of action with respect to injury to the person or to property. Specifically § 9–20–4 states:

"In all actions hereafter brought for personal injuries, or where such injuries have resulted in death, or for injury to property, the fact that the person injured, or the owner of the property, or person having control over the property may not have been in the exercise of due care shall not bar a recovery, but damages shall be diminished by the finder of fact in proportion to the amount of negligence attributable to the person injured, or the owner of the property or the person having control over the property."

Nothing in § 9–20–4 mandates or suggests that the theory of contributory negligence should be applied to cases that involve pecuniary damages to an aggrieved party resulting from misrepresentation. Consequently § 9–20–4 is not applicable to the instant case. Furthermore, the absence of any relevant statutory or case law in this jurisdiction with respect to negligent misrepresentation and the applicability of contributory negligence presents this court with an issue of first impression. Indeed the trial justice was aware of that fact and properly looked to the Restatement (Second) *Torts*, § 552 (1977) for guidance. Specifically § 552(1) provides:

"One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

The defendant's liability under § 552 appears to be supported by sound evidence within the record. However, as the trial justice noted, the problem of using § 552 for guidance lies in the limits imposed upon it by the principles set forth in Restatement (Second) *Torts* § 552A, which states, "The recipient of a negligent misrepresentation is barred from recovery for pecuniary loss suffered in reliance upon it if he is negligent in so relying."

■ At present there is a split of authority among the jurisdictions with respect to whether comparative negligence is to be applied to actions founded on negligent

misrepresentation that involve pecuniary loss. Indeed the trial justice was cognizant of this fact and, given the lack of case law within this jurisdiction, noted that he may in fact have been in error in failing to charge the jury with respect to comparative negligence.

The majority of jurisdictions have strictly adopted the principles set forth in comment (a) of § 552A, which reads in pertinent part:

"The recipient of a fraudulent misrepresentation who justifiably relies upon it is not barred from recovery by his contributory negligence in doing so. \* \* \* *But when the misrepresentation is not fraudulent but only negligent, the action is founded solely upon negligence, and the ordinary rules as to negligence apply. Therefore the contributory negligence of the plaintiff in relying upon the misrepresentation will bar his recovery.* This means that the plaintiff is held to the standard of care, knowledge, intelligence and judgment of a reasonable man, even though he does not possess the qualities necessary to enable him to conform to that standard." (Emphasis added.)

Indeed, the majority firmly adheres to the proposition that the imposition of principles of comparative negligence is an appropriate method for apportioning liability when the misrepresentation is only negligent. *See Aztlan Lodge No. 1 v. Ruffner,* 155 Ariz. 163, 745 P.2d 611 (1987) (court held jury should have been instructed on contributory-negligence theory in negligent-misrepresentation action by sellers against real estate broker and its agent); *Darner Motor Sales Inc. v. Universal Underwriters Insurance Co.,* 140 Ariz. 383, 682 P.2d 388 (1984) (court held that question of contributory negligence is for the trier of fact and turns on the reasonableness of an insured's failure to read the policy and his reliance on statements made by the agent); *Robinson v. Poudre Valley Federal Credit Union,* 654 P.2d 861 (Colo.Ct.App.1982) (holding that contributory-negligence principles apply to recipient of a negligent misrepresentation and to negligence that results in pecuniary loss); *McElroy v. Boise*

*Cascade Corp.,* 632 S.W.2d 127 (Tenn.Ct. App.1982) (court recognizes contributory negligence as a complete defense to a cause of action for negligent misrepresentation).

As noted by the Minnesota Supreme Court, the majority view is shared by many respected commentators, including Professor Prosser, who states that "there is 'no apparent reason for distinguishing negligent misrepresentation from any other negligence in [the application of contributory or comparative negligence concepts].'" *Florenzano v. Olson,* 387 N.W.2d 168, 176 (Minn.1986) (quoting W. Prosser, *Law of Torts* § 107 at 706 (4th ed. 1971)).

In addition to the fraudulent misrepresentation exemption set forth in Restatement (Second) *Torts* § 552A, comment (a) at 140, other states within the majority have carved out additional exceptions to the imposition of principles of comparative negligence in actions founded on negligent misrepresentation when the defendant is acting with expert knowledge or pursuant to a fiduciary relationship. The imposition of a higher duty on such defendants is apparently aimed at correcting disparate bargaining power and protecting unknowledgeable or innocent consumers.

In *Neff v. Bud Lewis Co.,* 89 N.M. 145, 548 P.2d 107 (1976), the New Mexico Court of Appeals held that contributory negligence was not a defense to a claim for negligent misrepresentation in which a fiduciary relationship exists. Specifically the court found that a broker was acting in a fiduciary relationship with a buyer and that the buyer was entitled to rely on the misrepresentations of the broker concerning the fitness of a building.

In *McAlvain v. General Insurance Company of America,* 97 Idaho 777, 780, 554 P.2d 955, 958 (1976), the Idaho Supreme Court held that since "[a] person in the business of selling insurance holds himself out to the public as being experienced and knowledgeable in this complicated and specialized field," the insured was entitled to recover from the insurance agent for

failure of the agent to procure adequate insurance coverage. Likewise, in *Moore v. Kluthe & Lane Insurance Agency, Inc.*, 89 S.D. 419, 428, 234 N.W.2d 260, 265 (1975), the Supreme Court of South Dakota "recognized the duty of care owed by an agent to an insured due to the relative disadvantages suffered by the insured in such a complicated transaction" and has further recognized the right to an insured to rely on the superior knowledge of the agent respecting matters concerning the scope of the policy's coverage. *See also Riddle–Duckworth, Inc. v. Sullivan*, 253 S.C. 411, 171 S.E.2d 486 (1969).

In contrast to the majority view, the minority of jurisdictions adopt the view that the principles of comparative negligence are not to be applied to actions founded on negligent misrepresentation resulting in pecuniary loss.

For example, the California Court of Appeals has held that comparative-fault analysis "has no place in the context of ordinary business transactions." *Carroll v. Gava*, 98 Cal.App.3d 892, 897, 159 Cal.Rptr. 778, 781 (1979). The court further stated that "the modern law of misrepresentation evolved from the 'action on the case of deceit' in business transactions. (See 1 Harper & James, Law of Torts (1956) § 7.1, p. 527, *Hale v. George A. Hormel & Co.* (1975) 48 Cal.App.3d 73, 82–86 [121 Cal.Rptr. 144]). Business ethics justify reliance upon the accuracy of information imparted in buying and selling, and the risk of falsity is on the one who makes a representation. (1 Harper & James, *supra*, at p. 551). This straightforward approach provides an essential predictability to parties in the multitude of everyday exchanges; application of comparative fault principles, designed to mitigate the often catastrophic consequences of personal injury, would only create unnecessary confusion and complexity in such transactions." *Id.*

In *Wilson v. Came*, 116 N.H. 628, 366 A.2d 474 (1976), the New Hampshire Supreme Court held that a defendant enriched by his misrepresentation is not allowed to raise the defense of contributory negligence unless the defendant suffers harm as a result of the plaintiff's negligence. Because the plaintiff's contributory negligence did not harm the defendant, the court concluded that it would be inequitable to allow the defendant to profit from his wrongful act. *Id.* at 631, 366 A.2d at 476.

As noted, there are some jurisdictions within the majority who have imposed higher duties in negligent-misrepresentation actions in an effort to correct disparate bargaining power and to protect unknowledgeable or innocent consumers. Likewise Alabama, a minority jurisdiction, has sought similar results by enacting legislation that demands ethical and honest conduct from members of virtually every professional occupation and who have a pecuniary interest in business transactions. *Southern States Ford, Inc. v. Proctor*, 541 So.2d 1081, 1090 (Ala.1989) (Hornsby, C.J. concurring).

In a case somewhat similar to the instant case, *Home Loan and Investment Association v. Paterra*, 105 R.I. 763, 255 A.2d 165 (1969), we concluded that a bank's failure fully to inform an accommodation maker that the relevant loan-insurance policy merely covered any unpaid balances not deemed to be in default constituted fraud and prevented the bank from collecting from defendant. The bank "owed a duty to speak out and advise the defendant that what he apparently believed about the insurance on the loans was not in accord with the facts." *Id.* at 768, 255 A.2d at 168. In deciding *Home Loan*, we adhered to the United States Supreme Court's holding, stating:

> "[T]he gist of the action is fraudulently producing a false impression upon the mind of the other party; and if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment or suppression of material facts not equally within the knowledge or reach of the plaintiff." *Id.* (quoting *Stewart v. Wyoming Cattle Ranche Co.*, 128 U.S. 383, 388, 9 S.Ct. 101, 103, 32 L.Ed. 439, 441 (1888)).

Although we are cognizant that *Home Loan,* was founded on fraud, whereas the instant case is founded on negligence, the former decision illustrates this court's recognition of the need to protect consumers, to remedy disparate bargaining power, and to prevent unfair business practices.

Consequently, in weighing the respective rationales of the majority and minority views, we are of the opinion that the minority view is better suited to the goals this jurisdiction seeks to achieve. We therefore agree with and adopt the propositions that the application of comparative-fault principles would only create unnecessary confusion and complexity in business transactions and that the risk of falsity should fall upon the party making the representation.

 The defendant's loan officer was experienced in closing loans and qualified to determine loan-insurance eligibility. However, neither defendant's loan officer nor anyone else ever inquired into Mr. Braswell's employment, retirement, or medical history. In contradiction to normal procedure, defendant's loan officer failed to supply and explain the statement of insurability to Mr. Braswell at the time of the closing and merely provided Mrs. Braswell with the statement after her husband had died. Furthermore, when he supplied Mr. Braswell with the certificate of insurance, defendant's loan officer did not only fail to explain its terms to Mr. Braswell, he also merely stated, "[h]ere is your Certificate of Insurance." Relying upon the implicit and explicit affirmations set forth by defendant's representatives coupled with the Braswells past loan dealings with defendant in which they were told each time that the loans were insured, Mr. Braswell properly assumed that the instant loan was in fact insured. Despite his failure to read the terms and provisions set forth in the certificate of insurance, we believe he was entitled to rely on the appearance and assurances set forth by defendant's loan officer with respect to loan insurance.

We agree that the facts presented fit squarely within the parameters of § 552 of the Restatement (Second) *Torts* and as a result the defendant should bear the risk of falsity created by the misrepresentation created by its agent. However, our desire to protect consumers and remedy disparate bargaining power, combined with Mr. Braswell's justifiable reliance, precludes us from adopting the principles set forth in § 552A and from applying comparative fault to actions founded on negligent misrepresentation and resulting in pecuniary loss. The trial justice was, therefore, correct in denying the defendant's request to instruct the jury with respect to comparative negligence.

For the reasons stated herein, the defendant's appeal is denied and dismissed. The judgment of the Superior Court is affirmed, and the papers of this case are remanded to the Superior Court.