# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 38928**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Tefera M. WORKNEH**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 24 March 2017

———————————

*Military Judge:* Brendon K. Tukey (arraignment); Joseph S. Imburgia (trial).

*Approved sentence:* Dishonorable discharge, confinement for six years, total forfeiture of pay and allowances, reduction to E-1, and to be fined $42,000.00 and, in the event the fine is not paid, to be confined two additional years. Sentence adjudged 29 September 2015 by GCM convened at Travis Air Force Base, California.

*For Appellant:* Kirk Sripinyo, Esquire (argued); Major Michael A. Schrama, USAF; Captain Patrick L. Clary, USAF.

*For Appellee:* Captain Tyler B. Musselman, USAF (argued); Colonel Katherine E. Oler, USAF; Gerald R. Bruce, Esquire; Morgan L. Herrell (civilian intern). [1]

Before DUBRISKE, HARDING, and C. BROWN, *Appellate Military Judges*

Judge C. BROWN delivered the opinion of the court, in which Senior Judge DUBRISKE and Judge HARDING joined.

———————————

[1] Ms. Herrell was a law student extern with the Air Force Legal Operations Agency and was at all times supervised by attorneys admitted to practice before this court.

---

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

---

C. BROWN, Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, consistent with his pleas, of unauthorized absence, larceny, and bank fraud in violation of Articles 86, 121, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 921, 134.[2] The military judge sentenced Appellant to a dishonorable discharge, confinement for six years, forfeiture of all pay and allowances, reduction to E-1, and a $42,000.00 fine with two years of additional contingent confinement if Appellant did not pay the fine. Pursuant to a pretrial agreement (PTA) limiting confinement to seven years, the convening authority approved the sentence as adjudged while waiving mandatory forfeitures for six months for the benefit of Appellant's dependent spouse pursuant to Article 58b, UCMJ, 10 U.S.C. § 858b.

On appeal, Appellant raises three assignments of error: (1) the military judge abused his discretion when he accepted Appellant's guilty plea to bank fraud under 18 U.S.C. § 1344(2) without establishing that Appellant made a false or fraudulent representation or promise or used false or fraudulent pretenses to effect the alleged crime; (2) the military judge abused his discretion when he accepted Appellant's guilty pleas without inquiring into whether Appellant's gambling addiction made him unable to appreciate the nature and quality of his acts or their wrongfulness; and (3) the convening authority failed to honor a material term of the PTA when he approved six years of confinement with an additional two years of contingent confinement in the event that Appellant did not pay the adjudged fine. We find no relief is warranted for the first two assigned errors but find merit in the third and thus direct the completion of a new convening authority's action and promulgating order.

## I. BACKGROUND

At the time of his offenses, Appellant was assigned as Deputy Disbursement Officer, 60th Comptroller Squadron, Travis Air Force Base (AFB), California. In this position, he had the authority to access and withdraw govern-

---

[2] Appellant pled not guilty to desertion under Article 85, UCMJ, 10 U.S.C. § 885, but guilty to the lesser-include offense of absence without leave, in violation of Article 86, UCMJ, 10 U.S.C. § 886. The Government declined to prove up the greater offense.

ment funds for official use by printing and authenticating United States Treasury checks and cashing those checks at the Armed Forces Bank on Travis AFB. He also had access to the Finance Area Cashier Vault (the Vault) at the comptroller squadron where cash funds were stored. In October 2012, Appellant went to a casino for the first time and began to play blackjack. He soon became a frequent visitor to the casino, and by October 2014, he had lost approximately $60,000.00 of his family's money, including their life savings and $43,000.00 in credit card advances. In an attempt to become debt free prior to an upcoming permanent change of station move, Appellant began to gamble with money he stole from the Vault. Initially, he took $5,000.00 from the Vault and quickly lost it at a casino. After this initial theft, Appellant gambled at casinos in California and Las Vegas, Nevada, using cash he took from the Vault. In total, Appellant stole $150,000.00 from the Vault, losing the entire amount gambling.

Desperate to gain back his losses, Appellant began issuing and cashing United States Treasury Checks at the Armed Forces Bank on Travis AFB to obtain more money to gamble. On six separate occasions, Appellant issued checks to himself, drafted fraudulent memoranda requesting "emergency cash," despite knowing there was no official paying agent mission requiring such funds, and presented the checks and memoranda to the Armed Forces Bank. On each occasion, Appellant cashed the check and used the funds to gamble at various casinos. During the charged time frame, Appellant used this scheme to obtain $240,000.00 in government funds. In total, including both cash taken from the Vault and checks cashed at Armed Forces Bank, Appellant stipulated he was responsible for taking $420,000.00 in government funds for his own personal use.

After cashing the last treasury check, Appellant went to a casino to spend the weekend gambling. After losing over $100,000.00 in Air Force funds over the course of a few days, Appellant bought a plane ticket to his home country of Ethiopia to see his family before he went to jail. Prior to leaving for Ethiopia, Appellant penned a letter to his commander, apologizing to him for the thefts and also to the bank for lying to them about the purpose for obtaining the money. Appellant remained absent without leave in Ethiopia for approximately six weeks before voluntarily returning to the United States.

## II. DISCUSSION

### A. Appellant's Plea to Bank Fraud in Violation of 18 U.S.C. § 1344(2)

Appellant asserts the military judge abused his discretion when he accepted Appellant's guilty plea without establishing that Appellant effected the alleged bank fraud through the use of a false or fraudulent representation or promise. Appellant avers the finding of guilty to the bank fraud charge and

specification should be set aside because of the absence of a material misrepresentation, and the case remanded for a sentencing rehearing. We disagree.

We review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996). A military judge must determine that there is an adequate basis in law and fact to support a guilty plea before accepting it. *United States v. Inabinette*, 66 M.J. 320, 321–22 (C.A.A.F. 2008). Military judges abuse their discretion when they accept a guilty plea if they fail to "obtain from the accused an adequate factual basis to support the plea" or they make any ruling based on an erroneous view of the law. *Id.* at 322. While military judges are afforded significant deference in this area, we review pure questions of law de novo. *Id.*

"A plea is provident so long as Appellant was 'convinced of, and [was] able to describe, all of the facts necessary to establish [his] guilt.'" *United States v. Murphy*, 74 M.J. 302, 308 (C.A.A.F. 2015) (alterations in original) (quoting *United States v. O'Connor*, 58 M.J. 450, 453 (C.A.A.F. 2003)). The military judge has a duty "to accurately inform [an a]ppellant of the nature of his offense," and "[a]n essential aspect of informing . . . is a correct definition of legal concepts." *United States v. Negron*, 60 M.J. 136, 141 (C.A.A.F. 2004); *see also United States v. Care*, 18 C.M.A. 535, 541 (C.M.A. 1969). Yet, failure to define correctly a legal concept or "explain[] each and every element of the charged offense to the accused in a clear and precise manner" is not reversible error if it is "clear from the entire record that the accused knew the elements, admitted them freely, and pleaded guilty because he was guilty." *United States v. Jones,* 34 M.J. 270, 272 (C.M.A 1992); *see also United States v. Redlinkski*, 58 M.J. 117, 119 (C.A.A.F. 2003). "If an accused sets up matter inconsistent with the plea at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014) (quoting *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014)). "The providence of a plea is based not only on the accused's understanding and recitation of the factual history of the crime, but also on an understanding of how the law relates to those facts." *Id.* at 386 (quoting *United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008)).

In examining the providence of guilty pleas, courts apply "the substantial basis test, looking at whether there is something in the record of trial . . . that would raise a substantial question regarding the appellant's guilty plea." *Inabinette*, 66 M.J. at 322. "A military judge abuses [his] discretion if he fails to obtain from the accused an adequate factual basis to support the plea—an area in which [courts] accord significant deference." *Id.*

Appellant was charged under clause 3 of Article 134, UCMJ, with bank fraud in violation of 18 U.S.C. § 1344(2). The elements of this offense are that (1) on divers occasions, Appellant knowingly executed a scheme to obtain

4

money or other property, owned by or in the control of a financial institution, by means of false pretenses; (2) the scheme included a material misrepresentation or concealment of a material fact; (3) Appellant had the intent to obtain money, or other property owned by, or in the control of a financial institution; and (4) the financial institution was an insured depository institution. 18 U.S.C. § 1344.

Appellant takes issue with the second element of the charge, noting he would have had to effect his bank frauds through a material false representations to have committed the offense. Appellant directs our attention to the United States Supreme Court's explanation that "[i]n general, a false statement is 'material' if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it is addressed.'" *Neder v. United States*, 527 U.S. 1, 16 (1999) (alteration in original). Appellant asserts there were no such misrepresentations on his part since he had the legal authority pursuant to his military duties to access and withdraw funds held by the wing by printing and cashing treasury checks. Furthermore, the Air Force was obligated to honor those checks once presented to them by the bank.

Appellant contends that neither his failure to disclose that he was taking the money for personal use nor the actual presentation of the check was a material misrepresentation. He cites to the Fourth Circuit for the proposition that "silence as to a material fact (nondisclosure), without an independent disclosure duty, usually does not give rise to an action for fraud . . . ." *United States v. Colton*, 231 F.3d 890, 899 (4th Cir. 2000).

During the *Care* inquiry, the military judge conducted a full inquiry into Appellant's understanding of the elements of 18 U.S.C. § 1334(2), and had Appellant describe in his own words all facts necessary to meet each element, ascertaining Appellant was personally convinced of his own guilt. In terms of the contested second element of the offense, the military judge first advised Appellant that his scheme to obtain money from the financial institution must have included a material misrepresentation or concealment of a material fact. The military judge advised Appellant that false representations include false statements as well as "the knowing concealment of material facts." The military judge further advised Appellant that a misrepresentation or concealment is material if "it has a natural tendency to influence or is capable of influencing the decision of a person with ordinary prudence and comprehension."

When asking Appellant what misrepresentations he made in furtherance of the bank fraud offense, the following colloquy occurred:

> MJ [military judge]: What were your false representations to the
> Armed Forces Bank?

Appellant: Your Honor, it was a memo that said, "Emergency Cash." The emergency that I had was my own personal gambling issue; it was not an emergency for the Air Force.

MJ: Okay. Do you believe that the statements about emergency cash concerned a material aspect of the matter in question that were known to be untrue when you made them, or made with reckless indifference as to the truth?

Appellant: Yes, Your Honor, they would not have given me money for gambling.

MJ: Okay . . . do you believe that your false representations to the Armed Forces Banks were material, and by that I mean: do you believe they had a natural tendency to influence, or be capable of influencing the decision of a person with ordinary prudence and comprehension, to give you money? And if you do believe it's material, why was it material?

Appellant: Yes, Your Honor, just for the same reasons I just stated.

The stipulation of fact is also instructive as to the materiality of Appellant's false representations to the bank. In it, Appellant agrees the fraudulent memorandums were needed to obtain the funds from the bank. In each instance, the memorandum requested emergency cash, and for each memorandum, Appellant admits that there was no paying agent mission requiring emergency cash, but instead the money was for his own personal use. Appellant admits that had bank personnel known the true purpose for withdrawing the funds, they would not have given him the money. Finally, in a letter written by Appellant and attached to the stipulation, Appellant apologizes to the Armed Forces Bank for telling them "the money was needed for a paying agent mission when it was not."

Appellant's reliance on *Colton* is misplaced as the holding notes, "Although silence as to a material fact (nondisclosure), without an independent disclosure duty, usually does not give rise to an action for fraud, suppression of the truth with the intent to deceive (concealment) does." *Colton*, 231 F.3d at 899 (citing *Stewart v. Wyoming Cattle Ranche Co.*, 128 U.S. 383, 388 (1888)). Here, the Fourth Circuit distinguished between nondisclosure and concealment, the latter of which allows for a finding of fraud. *Id*. at 899. While nondisclosure is "mere silence" without any accompanying elements of false representation, an accused engages in concealment through "deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter." *Id*. The court further defined concealment as:

> a representation that what is disclosed is the whole truth . . . [f]raudulently producing a false impression upon the mind of the other party; and if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment or suppression of material facts.

*Id*. (quoting *Stewart*, 128 U.S. at 388). Here, Appellant concealed the true purpose for obtaining the funds. Whether Appellant's actions are termed an affirmative misrepresentation or the knowing concealment of a material fact, Appellant's plea met all of the elements of bank fraud in violation of 18 U.S.C. § 1344(2), and is, therefore, provident.

## B. Effect of Appellant's Gambling Addiction on his Pleas

Appellant next asserts the military judge abused his discretion when he accepted Appellant's guilty pleas without inquiring into whether Appellant's addiction to gambling made him unable to appreciate the nature and quality of his acts or their wrongfulness. Throughout the trial, Appellant made numerous references to his addiction to gambling. Additionally, the parties attached three scientific papers discussing pathological gambling and its effects to the stipulation of fact. Finally, as part of his pretrial agreement, Appellant waived government production of witnesses beyond 50 miles, although he stated at trial he would have asked for a gambling expert or psychiatrist to testify on his behalf absent the limitation found in the PTA. Appellant now believes that the military judge had a duty to reopen his plea inquiry to inquire about an affirmative defense of lack of mental responsibility after the numerous references to Appellant's gambling addiction during trial.

A military judge's decision to accept a guilty plea is examined for an abuse of discretion, and questions of law arising from the guilty plea are reviewed de novo. *Inabinette*, 66 M.J. at 322. An abuse of discretion occurs when there is "something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." *Id*. "If an accused sets up matter inconsistent with the plea at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." *United States v. Phillippe*, 63 M.J. 307, 309 (C.A.A.F. 2006) (quoting *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996)) (quotation marks omitted). "Even if an accused does not volunteer all the facts necessary to establish a defense, if he sets up matter raising a possible defense, then the military judge is obliged to make further inquiry to resolve any apparent ambiguity or inconsistency." *United States v. Hayes*, 70 M.J. 454, 460 (C.A.A.F. 2012) (quoting *Phillippe*, 63 M.J. at 310).

Lack of mental responsibility is an affirmative defense. *United States v. Shaw*, 64 M.J. 460, 462 (C.A.A.F. 2007). This defense is established by demonstrating that at the time of the offenses, the accused: "(1) suffered from a 'severe mental disease or defect' and (2) as a result, was 'unable to appreciate the nature and quality or the wrongfulness of the acts.'" *United States v. Martin*, 56 M.J. 97, 103 (C.A.A.F. 2001) (quoting Article 50a(a), UCMJ, 10 U.S.C. § 850a(a)). An accused bears the burden of proving a lack of mental responsibility. *Shaw*, 64 M.J. at 462 (citing Rule for Courts-Martial (R.C.M.) 916(b)). A military judge may presume an accused is sane and that defense counsel has conducted an inquiry into whether the defense of lack of mental responsibility exists in the case at hand. *Shaw*, 64 M.J. at 463.

However, a military judge is obligated to conduct an appropriate inquiry, or even reopen the plea inquiry, "when a possible defense has been raised and not satisfactorily refuted because such a matter would be inconsistent with the accused's guilty plea." *United States v. Falcon*, 65 M.J. 386, 391 (C.A.A.F. 2008). The "'mere possibility' of a defense," on the other hand, "without more, does not give rise to this obligation." *Id.* (citing *Shaw*, 64 M.J. at 462). In *Falcon*, the appellant argued that the military judge should have reopened the *Care* inquiry after he introduced evidence of his gambling addiction in sentencing. *Id.* Ultimately, the court found that evidence of the appellant's gambling addiction introduced during sentencing neither set up a matter inconsistent with his pleas, nor required the military judge to inquire into the appellant's mental responsibility. *Id.* The court found "no authority that a diagnosis of pathological gambling can constitute a defense of lack of mental responsibility or partial mental responsibility." *Id.* at 391–92. The court noted "the lack of any testimony that Falcon's diagnosis could have affected his ability to form the specific intent to defraud," and found the military judge did not abuse his discretion in accepting the appellant's guilty plea. *Id.* at 392.

While there is no doubt Appellant had a gambling problem, there is no evidence in the record that a gambling addiction could or did render him unable to appreciate the nature and quality or the wrongfulness of his acts. Appellant's addiction was raised at trial; however, its effect on Appellant's ability to appreciate the nature of his actions was not. The articles admitted at trial and cited by Appellant on appeal discuss the potential underlying causes and motivations for pathological gambling, but they do not suggest that pathological gambling is a severe mental disease or defect that might cause someone to be unable to appreciate the nature and quality of their crimes or the wrongfulness of their acts. Similarly, Appellant had no diagnosed mental disease or defect calling into question his ability to appreciate the nature or wrongfulness of his offenses.

The *Care* inquiry demonstrates that lack of mental responsibility was not at issue in this case. Appellant repeatedly stated that he had no legal justifications or excuse for his actions, that his conduct was wrong, that he could have avoided engaging in the criminal conduct, and that no one forced him to commit the offenses. In terms of the bank fraud, Appellant stated, "I knew it was wrong each time, yet I returned for more money once I had lost it." The detailed nature of the bank fraud where on six different occasions Appellant had to issue a check, prepare a fraudulent memorandum, and present it to the bank to obtain the money belie Appellant's arguments now that he was unable to appreciate the nature and wrongfulness of his actions. Furthermore, his journey to Ethiopia to see his family one more time "before he would face prison" further support his appreciation of the nature and quality of his crimes and their wrongfulness. While better practice might have been for the military judge to reopen the *Care* inquiry after numerous references to a gambling addition, it was not required under the facts of this case, and we find Appellant's pleas provident.

## C. Convening Authority's Action

Appellant asserts the convening authority failed to honor a material term of the PTA when he approved a sentence that included six years of confinement with an additional two years' contingent confinement if Appellant did not pay the adjudged $42,000.00 fine. The sole sentence limitation in the PTA was to cap approval of adjudged confinement at seven years. At trial, the military judge reviewed the quantum portion of the PTA and counsel for both sides agreed that to be consistent with the PTA, contingent confinement should be limited to one year.

When an appellate issue concerns the meaning and effect of a PTA, interpretation of the agreement is a question of law, subject to de novo review. *Unites States v. Lundy,* 63 M.J. 299, 301 (C.A.A.F. 2006). When an appellant contends that the government has not complied with a term of the agreement, the issue of noncompliance is a mixed question of fact and law. *Id.* The appellant bears the burden of establishing that the term is material and that the circumstances establish governmental noncompliance. *Id.* at 302. In the event of noncompliance with a material term, we consider whether the error is susceptible to remedy in the form of specific performance or in the form of alternative relief agreeable to the appellant. *Id.* at 305 (Effron, J., concurring). If such a remedy does not cure the defect in a material term, the plea must be withdrawn and the findings and sentence set aside. *United States v. Perron,* 58 M.J. 78, 85–86 (C.A.A.F. 2003). "When the parties at trial evidence *on the record* their understanding of a bargain, the accused is entitled to have the bargain complied with according to that understanding." *United States v. Muller*, 21 M.J. 205, 206 (C.M.A. 1986). "[A]mbiguities in the interpretation of pretrial

agreements are resolved in favor of the accused." *United States v. Davis*, 20 M.J. 903, 905 (A.C.M.R. 1985).

We find the convening authority's action defective in two regards. First, while it technically served as the notification to Appellant that the fine was due and payable, it did not include a specific due date for the fine. *See* Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 9.34.1.[3] The government would be hard-pressed to enforce contingent confinement based upon Appellant's failure to pay the fine without informing Appellant when the fine was due to be paid. Second, because the parties' evidenced their understanding on the record that at most one year of contingent confinement could be approved, Appellant is entitled to the benefit of this interpretation. Thus, we direct the completion of a new convening authority's action and promulgating order to address the above deficiencies.

### III. CONCLUSION

The record of trial is returned to The Judge Advocate General for remand to the convening authority for withdrawal of the original action and substitution of a corrected action and promulgating order consistent with this opinion. Thereafter, the record of trial shall be returned to this court for completion of appellate review under Article 66, UCMJ, 10 U.S.C. § 866.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court

---

[3] This regulatory provision reads, "When the fine is ordered executed, the accused must be notified in writing the fine is due and payable. A specific due date should be included in the notification. If the accused is in confinement, the due date should normally be a reasonable period before the accused is scheduled for release from confinement to allow adequate time for a contingent confinement hearing and convening authority action."