RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0160p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CONSTRUCTION CONTRACTORS EMPLOYER GROUP, LLC,

                        *Plaintiff-Appellant*,

    *v.*

FEDERAL INSURANCE COMPANY,

                       *Defendant-Appellee*.

No. 15-4352

_____

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:14-cv-01468—David A. Katz, District Judge.

Argued: June 15, 2016

Decided and Filed: July 11, 2016

Before: GIBBONS, GRIFFIN, and DONALD, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:** Steven R. Smith, CONNELLY & COLLIER LLP, Toledo, Ohio, for Appellant. Tyler L. Mathews, MCDONALD HOPKINS LLC, Cleveland, Ohio, for Appellee. **ON BRIEF:** Steven R. Smith, Janine T. Avila, CONNELLY & COLLIER LLP, Toledo, Ohio, for Appellant. Tyler L. Mathews, Christopher G. Dean, MCDONALD HOPKINS LLC, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

    BERNICE BOUIE DONALD, Circuit Judge. Construction Contractors Employer Group ("Construction Contractors") discovered that an employee had misappropriated certain funds and

that another $1 million was missing.  It then purchased an employee-theft insurance policy with Federal Insurance Company ("Federal Insurance").  After Federal Insurance executed the policy, Construction Contractors determined that the same employee had misappropriated the missing $1 million.  Federal Insurance denied Construction Contractors' claim for the $1 million, and Construction Contractors filed suit.  The district court granted Federal Insurance's motion for summary judgment, concluding that any loss caused by one employee is considered a "single loss" under the policy and that Construction Contractors had "discovered" the loss before the execution of the policy.  Construction Contractors appeals, but we **AFFIRM** the district court's judgment.

I.

Associated General Contractors of Northwest Ohio ("Associated General") is a non-profit corporation and trade organization for commercial construction contractors.  In December 2001, Associated General formed a subsidiary, Construction Contractors, which carried out various employment functions for regional construction employers called "subscribers."  Subscribers would transfer funds into Construction Contractors' accounts to cover gross payroll, taxes, benefits, and administrative costs.  Construction Contractors would then disburse the funds to satisfy subscribers' various obligations.

In April 2002, Construction Contractors outsourced its daily operations to AlphaCare Services, Inc. ("AlphaCare"), which was owned and managed by William H. Cook, III, Gerald L. Tillman, and John E. Moon ("Moon").  Per an agreement between the two companies, AlphaCare would manage Construction Contractors' subscribers' payroll as well as issue payroll checks to subscribers' employees.  The relationship between Construction Contractors and AlphaCare continued successfully for a number of years.  However, in July 2012, Moon informed Construction Contractors' president Kevin Smith that Construction Contractors did not have enough assets to meet its obligations even though the subscribers had paid Construction Contractors enough money to fulfill their respective obligations.  Moon later explained that he had been falsifying Construction Contractors' financial statements and that the company had substantial unpaid tax liabilities.

On July 31, 2012, Construction Contractors terminated its agreement with AlphaCare. The next day, it hired Peter VanDenBerghe as interim Chief Financial Officer and Treasurer. VanDenBerghe began reviewing Construction Contractors' accounts. His investigation revealed that the Internal Revenue Services (IRS) had started levying Construction Contractors' accounts in 2011. On July 20, 2012, the IRS filed a Notice of Levy that demonstrated that Construction Contractors owed more than $1.25 million, plus penalties, in unpaid taxes dating back to 2005. VanDenBerghe also discovered that AlphaCare had failed to remit Ohio unemployment taxes for the first quarter of 2012, which amounted to $715,000.

Because Moon was responsible for remitting and reporting taxes, VanDenBerghe suspected that Moon was the reason for the loss. Focusing his investigation on Moon, in October 2012, VanDenBerghe determined that Moon had committed wire fraud by transferring over $900,000 from Construction Contractors' account to AlphaCare's account between May 2009 and June 2012. In November 2012, the investigation further revealed that Moon had charged Construction Contractors for $30,000 worth of health care premiums and health savings account deposits for AlphaCare employees. VanDenBerghe continued his investigation, as approximately $1 million was still unaccounted for.

On or about January 10, 2013, Construction Contractors applied for a crime-coverage insurance policy, which included coverage for employee theft, from Federal Insurance. The application instructed Construction Contractors to list "all employee theft, forgery, computer fraud or other crime losses discovered . . . in the last five years, itemizing each loss separately." Construction Contractors disclosed the following:

> Since 2002, [Construction Contractors] was in contract with AlphaCare [] to provide specific management duties for [it]. Those duties included the direct management of the corporate bookkeeping and payroll processing. Effective July 31, 2012, [Construction Contractors] terminated its contract with [AlphaCare] for breach of contract. [AlphaCare] was contractually responsible for processing our participants' payroll and remitting payroll taxes to the proper taxing authorities. A subsequent review of [AlphaCare's] performance has indicated [its] failure to report, reconcile and remit certain payroll taxes.
>
> A subsequent review of [Construction Contractors'] accounting records indicated unauthorized transfers from [Construction Contractors] owned accounts to ACS

owned accounts from 2009 to 2012. Further investigation is in process, and the potential for criminal prosecution is being evaluated by our company attorneys.

Federal Insurance issued the policy to Construction Contractors, extending coverage from March 22, 2013, through July 1, 2013, and insuring up to $1 million in covered losses. Three provisions of the policy are relevant to this case. First, Construction Contractors purchased a "Loss Discovered" option, which excludes "any loss that an Insured is aware of prior to the inception date of [the] Policy."

Second, under the "Limits of Liability" section, the policy stated the following:

> All loss resulting from a single act or any number of acts of the same Employee or Third Party, and all loss whether such act or acts occurred before or during the Policy Period, will be treated as a single loss and the applicable Limit of Liability set forth in Item 2 of the Crime Declarations will apply, subject to Section X, Liability for Prior Losses.

Third, the section entitled "Liability for Prior Losses" provided that, for the Loss Discovered option, "coverage will be available for loss sustained at any time and Discovered during the Policy Period." For purposes of the policy, "discovered" is defined as "knowledge acquired by an Executive or Insurance Representative of an Insured which would cause a reasonable person to believe a covered loss has occurred or an occurrence has arisen that may subsequently result in a covered loss." The definition continues by stating that losses excluded from coverage are those "sustained prior to the inception date of any coverage" as well as where "the exact amount or details . . . are unknown."

After the execution of the policy, in May 2013, Construction Contractors detected the method by which Moon had misappropriated the missing $1 million. VanDenBerghe determined that from 2002 until May 2009, Moon had committed check theft by having subscribers write checks to Construction Contractors using AlphaCare's account number.

Based on this discovery, Construction Contractors submitted a claim for the $1 million check theft to Federal Insurance, which denied the claim. Construction Contractors then filed suit in the district court, seeking declaratory and monetary relief for breach of contract. Both parties filed motions for summary judgment. The district court granted Federal Insurance's motion, concluding that any loss caused by one employee was a single loss under the policy and

that Construction Contractors was aware of the loss before the policy's inception date. Construction Contractors appeals.

II.

We review a district court's grant of summary judgment *de novo*. *Winningham v. N. Am. Res. Corp.*, 42 F.3d 981, 984 (6th Cir. 1994). Summary judgment is proper where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, we must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). We draw all reasonable inferences and construe all evidence in favor of the nonmoving party. *FDIC v. Jeff Miller Stables*, 573 F.3d 289, 294 (6th Cir. 2009).

Ohio state law dictates that interpretations of insurance contracts are questions of law for a court to answer. *Costanzo v. Nationwide Mut. Ins.*, 832 N.E.2d 71, 77 (Ohio Ct. App. 2005). Ohio courts "examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy." *Westfield Ins. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003). The scope of insurance coverage is determined by construing the contract "in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." *Allstate Ins. v. Eyster*, 939 N.E.2d 1274, 1280 (Ohio Ct. App. 2010) (quoting *King v. Nationwide Ins.*, 519 N.E.2d 1380, 1383 (Ohio 1988)). When reviewing provisions regarding coverage exclusions, Ohio presumes that anything not clearly excluded from the policy is covered. *Home Indem. Co. of N.Y. v. Vill. of Plymouth*, 64 N.E.2d 248, 250 (Ohio 1945). Therefore, "if a policy does not plainly exclude a claim from coverage, then an insured may infer that the claim will be covered." *Andersen v. Highland House Co.*, 757 N.E.2d 329, 332 (Ohio 2001).

When analyzing similar loss-discovered provisions to the one at issue here, we have noted that "discovery of loss does not occur until the insured discovered facts showing that dishonest acts occurred and appreciates the significance of those facts." *FDIC v. Aetna Cas. &*

*Sur. Co.*, 903 F.2d 1073, 1079 (6th Cir. 1990). Mere suspicion of loss is not sufficient to demonstrate that an insured discovered the loss. *Id.* The Third Circuit noted that a "reasonable person" component permits "the trier of fact to analyze the full range of information the insured knew so as to determine whether a reasonable person would assume, based on all of the circumstances, that a covered loss had or would be incurred." *Resolution Trust Corp. v. Fidelity & Deposit Co.*, 205 F.3d 615, 631 (3d Cir. 2000).

Construction Contractors claims that if the policy is narrowly construed as required by Ohio law, the check-theft loss is a covered loss under its policy with Federal Insurance. First, it asserts that the check-theft loss is covered under the "Employee Theft Coverage" provision of the policy because Moon was a covered employee when he misappropriated funds. Second, it argues that the Loss-Discovered provision applies because it did not "discover" the check-theft loss until it determined that Moon misappropriated the $1 million through check theft and that there was no operational loss. Lastly, Construction Contractors argues that the single-loss provision of the "Limits of Liability" section does not operate to limit the definition of "loss" because it is only triggered under the policy if the policy already covers the loss. In other words, in Construction Contractors' view, the "Limits of Liability" section only operates to limit covered losses to $1 million, not to define whether the policy covers a loss.

Federal Insurance counters, arguing that Moon was not a covered employee. It further claims that even if Moon was an employee, the check theft is excluded from coverage under the single-loss provision of the Limits of Liability section. Both the check-theft loss and the wire-fraud loss were the result of a single actor, Moon, and the provision provides that all actions of a single actor constitute a single loss for purposes of the policy. Federal Insurance contends that because Construction Contractors had already discovered the wire fraud before the inception of the policy, it derivatively "discovered" the check theft, as both constitute a single loss. Finally, even if Moon was a covered employee and even if the check theft was separate from the wire fraud, Federal Insurance asserts that the definition of "discovered" applies to the check-theft loss, as the policy considers loss "discovered" even if "the exact amount or details . . . are unknown." It claims that Construction Contractors knew of the check theft based on the surrounding circumstances—i.e., (1) that it had negative equity of over $2 million; (2) that $1 million was

due to Moon's fraudulent schemes; (3) that another $1 million was unaccounted for; (4) that Moon had falsified Construction Contractors' financial records; (5) and that Moon had failed to pay federal and state taxes.

Given that Ohio courts read insurance contracts as a whole and "give effect to each provision of the contract," *Cincinnati Ins. v. CPS Holdings, Inc.*, 875 N.E.2d 31, 35 (Ohio 2007), the district court properly determined that all of the loss attributable to Moon was a single loss under the policy and that Construction Contractors had "discovered" that loss prior to the execution of the policy. Contrary to Construction Contractors' assertion that the "Limits of Liability" provision does not affect whether a particular loss is covered, the provision directly implicates coverage considerations in its text. The single-loss provision states that a single loss is "subject to Section X, Liability for Prior Losses." The "Liability for Prior Losses" section includes the "Loss Discovered" option—i.e., the coverage option for losses "sustained at any time and Discovered during the Policy Period." R. 25-4, PageID #174, 176. Thus, if a loss arises under the "Loss Discovered" option, the single-loss provision applies. Here, the undisputed facts demonstrate that Construction Contractors knew of the wire-fraud loss before executing the insurance policy with Federal Insurance. Because Construction Contractors discovered the wire fraud prior to the policy's execution and the check theft and wire fraud constitute a single loss, the check-theft loss is excluded from coverage under the policy.

III.

For the foregoing reasons, we **AFFIRM** the district court's judgment.