NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0011n.06

Case No. 16-1443

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jan 06, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| LUCIA GASON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| DOW CORNING CORPORATION, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | OPINION |
| | ) | |

**BEFORE: BOGGS, GILMAN, and DONALD, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** Lucia Gason, a citizen of Belgium, is an employee of Dow Corning Corporation. After working for Dow Corning's European affiliate in Belgium for 14 years, she utilized a series of temporary visas to work for Dow Corning in the United States, starting in 2007. Gason accepted a permanent assignment in 2012 with Dow Corning's Michigan office. Approximately two years later, however, Dow Corning ceased to sponsor her application for legal permanent residence (a green card), terminated her employment in the United States, and relocated her to a position back in Belgium.

This prompted Gason to file suit against Dow Corning based on the theories of fraudulent misrepresentation, promissory estoppel, and breach of contract. The district court granted Dow

Corning's motion for summary judgment. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Factual background

#### 1. *Gason's promotion*

Dow Corning, which produces silicone and silicone-based products, offered Gason a promotion to a director position at its Michigan office in 2011. Accepting the offer meant that Gason would forfeit her Belgian contract, which included a substantial pension plan and several other valuable benefits. The offer, however, included a variety of its own benefits, such as relocation allowances, storage, housing payments, tax assistance, and a pension. The offer also meant that Gason would be on permanent rather than temporary assignment in the United States.

Two Dow Corning employees, Heidi Landry-Chan and Peggy Gerstacker, had discussions with Gason about the offer of a director position in Michigan. According to Gason, Landry-Chan "mentioned localization" (meaning the transfer to a permanent assignment in the United States) during this conversation, but neither Landry-Chan nor Gerstacker used "the words 'green card' . . . [or] the term 'permanent residency.'" Gerstacker nonetheless later acknowledged in a deposition that "when somebody localizes, . . . we always tried to get them a green card." Dow Corning's Relocation Administrator Kim Butler confirmed that "localization necessarily includes Dow Corning sponsoring that employee for a green card."

Dow Corning did not, however, promise Gason that it would maintain her employment indefinitely after she "localized" in Michigan. To the contrary, Gason was informed, and understood, that localization necessarily entailed the termination of her Belgian contract and the commencement of her employment under Dow Corning's terms and conditions of United States

employment. Those conditions included the fact that her employment would be "at will" and could be terminated with or without cause at any time.

In February 2012, Gason accepted the offer to localize in Michigan. She purchased a home in Midland, Michigan and became the Director of Indirect Capital Procurement for Dow Corning.

### 2. *The green-card process*

Obtaining a green card is typically a lengthy process. The most important aspect for purposes of this appeal is the employer's submission of certain materials into a Program Electronic Review Management (PERM) application. An employer sponsoring an employee for a green card must satisfy the government that there are no United States citizens who could perform the job equally well. To carry out this requirement, a sponsoring employer must submit a series of documents, including a description of the job, minimum job requirements, evidence that the sponsored employee meets those requirements, and a prevailing-wage determination from the Department of Labor (DOL), the latter being an approximation of how much the worker would be paid according to prevailing wage rates. The employer must then solicit applications from United States citizens and interview every applicant who appears to be qualified. Once these steps are complete, the employer must attest to the DOL in a PERM application that no United States applicant was qualified for the job.

The DOL typically audits a PERM application when the job requires 10 years or more of experience, as Gason's did. This usually extends the amount of time that the green-card application process can be expected to take.

Dow Corning retained the Fragomen law firm as outside counsel to assist with Gason's green-card application after she localized. In order to finalize the paperwork before soliciting

job applications from United States citizens, Fragomen needed a variety of documents from Dow Corning and Gason. Dow Corning's relocation specialist, Ranae Ratajczak, began the process of producing and compiling these documents. She emailed the PERM questionnaire to Gason in August 2012, requesting that she complete and return it. When Gason did not do so, Ratajczak sent follow-up requests to Gason in September 2012, October 2012, and February 2013. Gason never replied.

While Ratajczak's requests were pending with Gason, Dow Corning commenced a restructuring program in late 2012. Gason's position as Director of Indirect Capital Procurement was eliminated as part of the restructuring, but she accepted an offer to begin work as a Procurement Shared Services Manager. This role was substantially different from her directorial role and had a variety of duties distinct from her former position. The PERM application process consequently needed to start anew to reflect her new position.

By September 2013, Dow Corning had finalized the new job description for Gason's managerial position and sent it to Fragomen. Ratajczak followed up by sending Gason a new PERM questionnaire later that same month for Gason to complete. Gason again did not promptly respond with the completed questionnaire. Ratajczak consequently sent reminder emails on October 9 and 16, 2013. Gason finally returned the completed questionnaire on October 18, 2013. Fragomen then furnished Dow Corning with a draft of the PERM master document, but Gason delayed roughly two months from early December 2013 to late January 2014 in providing the information that Fragomen needed for the finalized master document.

Fragomen next requested that Dow Corning complete the chart necessary to document Gason's job requirements, which was a necessary component of the PERM application. Gason asked Ratajczak to complete the chart in February 2014, but Ratajczak informed Gason that this

was something that Gason needed to do because completion required knowledge of Gason's professional background. Ultimately, Gason completed and updated the requirements chart and the finalized master document in April 2014, after Ratajczak's coworker sent a message to Gason stating that "[t]iming is becoming a critical issue in this matter. Your prompt response is needed."

In May 2014, Fragomen requested a prevailing-wage determination from the DOL. Dow Corning published the required postings in August 2014, after receipt of the wage determination.

### 3. *Gason's demotion*

Gason's leadership and management style was the subject of criticism from members of her team during the course of the green-card application process. In September 2014, roughly one month after Dow Corning finally posted its job advertisement for purposes of Gason's PERM application, Dow Corning terminated Gason's employment as the Procurement Shared Services Manager. Gason's supervisor informed Gason that the green-card application process would end, and he offered her a position as a manager in Belgium beginning in 2015.

About one month before Gason's termination, Relocation Administrator Kim Butler wrote to Fragomen that she wanted the firm to "hold off doing anything further on the Lucia Gason matter. . . . [T]here is discussion surrounding the possibility of sending Lucia back to Belgium." Butler implied that the firm should refrain from revealing this information to Gason at the time.

## B. Procedural background

Gason filed her first complaint and a motion for a preliminary injunction to prevent her transfer to Belgium in March 2015. She asserted claims of retaliation related to discrimination

on the basis of her ancestry and ethnicity. The district court denied her motion for a preliminary injunction.

Gason filed an amended complaint in April 2015, alleging the claims currently at issue on appeal. She contends that Dow Corning made fraudulent misrepresentations concerning her application for a green card, that those misrepresentations made Dow Corning liable to her on a theory of promissory estoppel, and that Dow Corning's failure to obtain a green card for her constituted a breach of contract. In support of her claims, Gason asserted, in part, that Dow Corning "offered Gason a promotion . . . , which necessarily included a Green [C]ard to be secured by the Company for Gason"; that Dow Corning "promised that it would obtain for Gason a Green [C]ard"; that Dow Corning "never intended to pursue a Green Card on behalf of Gason or learned shortly after its promise that it would not in fact attempt to secure the Green Card"; and that Dow Corning's "failure to disclose would create a false impression that it was in fact [pursuing] a Green Card for Gason." The parties later jointly stipulated to the dismissal of the retaliation and discrimination counts, leaving only the fraudulent-misrepresentation, promissory-estoppel, and breach-of-contract claims.

Dow Corning moved for summary judgment. It argued that Gason's fraud claim must fail because Dow Corning never promised to obtain a green card for her; that her promissory-estoppel claim must fail because whatever Dow Corning promised Gason was insufficiently specific under Michigan law to render the promise enforceable; and that her breach-of-contract claim must fail because no contract was ever formed. The district court granted Dow Corning's motion. In its order, the district court concluded that there was no evidence upon which a reasonable juror could find that Dow Corning represented to Gason that it would obtain a green card for her; that whatever promise Dow Corning did make to Gason was insufficiently specific

as a matter of law to trigger liability under a theory of promissory estoppel; and that no evidence existed upon which a reasonable juror could find that Gason and Dow Corning "mutually agreed that Dow would obtain a Green Card for her." This timely appeal followed.

## II. ANALYSIS

### A. Standard of review

We review de novo a district court's decision to grant summary judgment. *Constr. Contractors Emp'r Grp., LLC v. Fed. Ins. Co.*, 829 F.3d 449, 453 (6th Cir. 2016). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We draw all reasonable inferences and construe all evidence in favor of the nonmoving party." *Constr. Contractors*, 829 F.3d at 453.

### B. Fraudulent-misrepresentation claim

Under Michigan state law, fraudulent misrepresentation has the following six elements:

1. The defendant made a material representation.
2. The representation was false.
3. When the defendant made the representation, [the defendant] knew that it was false, or the defendant made the representation recklessly, without any knowledge of its truth, and as a positive assertion.
4. The defendant made the representation with the intention that it should be acted on by the plaintiff.
5. The plaintiff acted in reliance on the representation.
6. The plaintiff suffered injury due to his reliance on the representation.

*Hord v. Envtl. Research Inst. of Mich.*, 617 N.W.2d 543, 546 (Mich. 2000) (per curiam). Michigan law also recognizes "silent fraud" as an actionable claim for fraudulent misrepresentation, "since 'a suppression of the truth may amount to a suggestion of falsehood.'" *U.S. Fid. & Guar. Co. v. Black*, 313 N.W.2d 77, 88 (Mich. 1981) (quoting *Stewart v. Wyo. Cattle*

*Ranche Co.*, 128 U.S. 383, 388 (1888)). "In order for the suppression of information to constitute silent fraud[, however,] there must be a legal or equitable duty of disclosure." *Id.*

Gason's claim of fraudulent misrepresentation can be divided into two parts. She first contends that Dow Corning affirmatively and fraudulently promised to sponsor her green-card application during their conversations about her promotion to a management position in 2011. Second, Gason claims that Dow Corning committed silent fraud when it did not inform her that it intended to cease its efforts to sponsor her green-card application in 2014.

Although Dow Corning raises several arguments against the first part of Gason's fraudulent-misrepresentation claim, one argument disposes of the matter in a single stroke— there is no evidence in the record that Dow Corning, at the time it represented to Gason that her promotion would include localization in the United States (and thus sponsorship through the green-card application process), actually "knew that [the representation] was false." *See Hord*, 617 N.W.2d at 546. In fact, the undisputed evidence establishes that Dow Corning went to considerable length to support Gason's green-card application: it retained outside counsel, followed up on unanswered requests for Gason to complete certain documents, and regularly facilitated conversations between Gason, Fragomen, and Dow Corning's own relocation specialists to ensure that the green-card application process was moving along.

On its face, Gason's amended complaint asserts that Dow Corning promised Gason *to obtain* a green card for her. Indeed, the district court granted summary judgment to Dow Corning principally on the basis that there was no evidence of such a promise:

> While Dow did agree to localize Gason in the United States, there
> is no evidence that Dow represented to Gason that it would obtain
> a Green Card for her as part of that process. At most, by localizing
> Gason[,] Dow agreed to begin the process of sponsoring her for a
> Green Card. . . . The fact that Gason thought Dow was promising

> to obtain a Green Card for her does not affect this analysis because "[a] plaintiff's subjective misunderstanding of information that is not objectively false . . . cannot mean that a defendant has committed . . . fraudulent misrepresentation."

*Gason v. Dow Corning Corp.*, 170 F. Supp. 3d 989, 997 (E.D. Mich. 2016) (quoting *Hord*, 617 N.W.2d at 549)).

A promise to *obtain* a green card for Gason would have been impossible for Dow Corning to carry out because Dow Corning cannot issue green cards. The most that Dow Corning could have promised Gason—impliedly through offering her a localized position in the United States—was to sponsor her in the green-card application process while she remained employed in a localized position. Dow Corning in fact carried out that promise. Moreover, there is no evidence that, at the time Dow Corning made this promise, it had any contrary intention. There is consequently no evidence on which a reasonable juror could find that Dow Corning fraudulently misrepresented a material fact to Gason.

Gason's claim for silent fraud fails for a different reason. In Michigan, a claim for silent fraud can lie only when there exists a legal duty of disclosure. *Hord*, 617 N.W.2d at 550. That duty can be found "where a plaintiff makes inquiries to a defendant, 'to which the defendant makes incomplete replies that are truthful in themselves but omit material information.'" *Id.*; *see also M&D, Inc. v. W.B. McConkey*, 585 N.W.2d 33, 39 (Mich. Ct. App. 1998) (special conflict panel) ("Our review of Michigan Supreme Court precedent regarding th[e] issue [of silent fraud] reveals that, in every case, the fraud by nondisclosure was based upon statements by the vendor that were made in response to a specific inquiry by the purchaser, which statements were in some way incomplete or misleading." (quoting *M&D, Inc. v. McConkey*, 573 N.W.2d 281, 287 (Mich. Ct. App.), *vacated*, 573 N.W.2d 281 (Mich. Ct. App. 1997))).

There is no evidence in this case upon which a reasonable juror could find that Gason made "a specific inquiry" concerning the status of her green-card application, and Gason has cited no caselaw to support the proposition that Dow Corning had a duty to disclose that it had stopped the process. *See M&D, Inc.*, 585 N.W.2d at 39. Moreover, Dow Corning reserved the right to terminate Gason's employment at will. It thus had no duty to disclose that it would put the brakes on Gason's application in 2014.

## C. Promissory-estoppel claim

In Michigan, a claim for promissory estoppel has four elements:

> (1) a promise,
> (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee,
> (3) which in fact produced reliance or forbearance of that nature,
> (4) in circumstances such that the promise must be enforced if injustice is to be avoided.

*Leila Hosp. & Health Ctr. v. Xonics Med. Sys., Inc.*, 948 F.2d 271, 275 (6th Cir. 1991) (quoting *McMath v. Ford Motor Co.*, 259 N.W.2d 140, 142 (Mich. Ct. App. 1977) (per curiam)). "The doctrine of promissory estoppel is cautiously applied," *Marrero v. McDonnell Douglas Capital Corp.*, 505 N.W.2d 275, 278 (Mich. Ct. App. 1993) (per curiam), and its "sine qua non . . . is that the promise be clear and definite," *State Bank of Standish v. Curry*, 500 N.W.2d 104, 108 (Mich. 1993).

Construing Gason's amended complaint liberally, it alleges that Dow Corning promised to sponsor Gason's application for a green card. That Dow Corning would sponsor such an application was necessarily implied in its offer to localize Gason's employment in the United States. To this extent, Dow Corning made a clear and definite promise to her. By offering Gason a localized position, Dow Corning assumed responsibility to make reasonable efforts to

sponsor her green-card application so that she could work legally in the United States. This conclusion is buttressed by the Supreme Court of Michigan's admonition that, "[t]o determine the existence and scope of a promise, [the court must] look to the words and actions of the transaction as well as the nature of the relationship between the parties and the circumstances surrounding their actions." *Id.* at 109. To conclude, as the district court did, that there is no evidence that Dow Corning made any commitment whatsoever concerning Gason's immigration status ignores the nature of the parties' relationship and the simple truth that Dow Corning's offer of a localized position necessarily entailed an effort to obtain legal-permanent-residence status for Gason—an effort that Dow Corning subsequently commenced.

We can, however, "affirm the judgment of the district court on any ground supported by the record." *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 477 (6th Cir. 2010). The record here shows that Gason agreed to at-will employment when she accepted a localized position in the United States. She also delayed the green-card application process by not timely submitting paperwork. The undisputed evidence further shows that Dow Corning went to considerable length to carry out its promise to sponsor her application.

Forcing Dow Corning to continue to sponsor her application or to pay damages for ceasing to do so would strip Dow Corning of its rights under Gason's at-will employment contract, ignore Gason's contributions to the delay, and disregard the fact that Dow Corning did make concerted efforts to carry out its promise. Because there is no evidence in the record that would permit a reasonable juror to reach a contrary conclusion, there is no injustice to avoid. *See Leila Hosp. & Health Ctr.*, 948 F.2d at 275. Accordingly, we affirm the district court's ruling on the promissory-estoppel claim, but not on the same grounds as were relied upon by that court.

## D. Breach-of-contract claim

A breach-of-contract claim requires proof that a contract existed. A valid contract in Michigan requires, among other things, "mutuality of agreement." *Hess v. Cannon Twp.*, 696 N.W.2d 742, 748 (Mich. Ct. App. 2005). Mutuality of agreement requires "a meeting of the minds on all the material facts . . . , and whether such a meeting of the minds occurred is judged by an objective standard, looking to the express words of the parties and their visible acts." *Groulx v. Carlson*, 440 N.W.2d 644, 648 (Mich. Ct. App. 1989).

As discussed above, the most that Dow Corning could have promised was that it would sponsor Gason's green-card application as long as she was a localized employee. Dow Corning could not have promised to actually obtain a green card for her because Dow Corning is not empowered to issue green cards. Nor could Dow Corning have promised to maintain Gason's employment until she obtained a green card because the undisputed evidence shows that Gason agreed to the terms of localized employment, which included an at-will provision. Consequently, if Gason believed that Dow Corning promised to *obtain* a green card for her, there is no evidence of mutuality of agreement on that point. To the extent that the parties mutually, if impliedly, agreed that Dow Corning would make a good-faith effort to sponsor Gason's green-card application during the duration of Gason's localized employment, Dow Corning fulfilled that promise by retaining counsel to assist in the matter and regularly seeking Gason's participation when she was dilatory in completing the necessary paperwork. The district court therefore did not err in granting summary judgment on this claim.

In regard to Gason's claim that Dow Corning violated a covenant of good faith and fair dealing in ceasing to sponsor her green-card application, "Michigan law does not recognize the existence of an implied covenant of good faith and fair dealing in the employment arena."

*McCormick v. Sears, Roebuck & Co.*, 712 F. Supp. 1284, 1289 (W.D. Mich. 1989) (citing *Mich. State Emps. Ass'n v. Dep't of Mental Health*, 365 N.W.2d 93, 96 (Mich. 1984)). Gason seeks to sever her claim for a breach of the implied covenant of good faith and fair dealing from her claim for breach of her employment contract in order to avoid the rule described above. She suggests that Dow Corning's promise to sponsor her green-card application was separate from her employment contract and constituted a separate agreement as to which Dow Corning's performances was "a matter of its own discretion," as required for a good-faith-and-fair-dealing claim. *See Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003).

Gason's argument, however, is inconsistent with her earlier, repeated assertions that Dow Corning's "provision of her green card was *part and parcel* of the localization process." In addition, Gason does not appear to have raised a claim for a breach of the implied covenant of good faith and fair dealing in her amended complaint and has thus waived such an argument. *See, e.g.*, *Lamson & Sessions Co. v. Peters*, 576 F. App'x 538, 543 (6th Cir. 2014). The district court therefore did not err in granting summary judgment for Dow Corning on Gason's breach-of-contract claim.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.