NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0410n.06

Case No. 23-1935

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Oct 18, 2024
KELLY L. STEPHENS, Clerk

HOME-OWNERS INSURANCE COMPANY,

    Plaintiff - Appellee,

v.

HERBERT BOXER; MARIAN BOXER,

    Defendants - Appellants.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

OPINION

Before: McKEAGUE, KETHLEDGE, and NALBANDIAN, Circuit Judges.

**McKEAGUE, Circuit Judge.** The Michigan No-Fault Insurance Act requires automobile insurers to provide certain personal protection insurance (PIP) benefits to drivers. When it was first enacted, the No-Fault Act generally required the driver's insurer to provide PIP benefits to passengers who were injured in an accident. But in 2019, the No-Fault Act was amended. Now, out-of-state residents who are injured in an accident are not entitled to PIP benefits unless they owned a vehicle that was registered and insured in Michigan.

Shortly after these amendments were enacted, Herbert and Marian Boxer—residents of Colorado—were passengers in William Cron's car. Cron's car was in an accident in Michigan, and the Boxers were injured. The question presented to us is whether Cron's insurer, Home-Owners Insurance, is required to provide PIP benefits to the Boxers.

Because Cron's insurance policy with Home-Owners is "subject to" the amended No-Fault Act, we **AFFIRM** the district court's grant of summary judgment to Home-Owners.

No. 23-1935, *Home-Owners Ins. Co. v. Boxer, et al.*

## I.

### A.     The Michigan No-Fault Insurance Act

The Michigan No-Fault Insurance Act was passed in 1973 as "an innovative social and legal response to the long payment delays, inequitable payment structure, and high legal costs inherent in the tort (or 'fault') liability system." *Shavers v. Kelley*, 267 N.W.2d 72, 77 (Mich. 1978). Under the no-fault system, Michigan motorists are required to purchase a no-fault insurance policy from a private insurer, and the benefits provided by the insurer are a "substitute" for traditional common law tort remedies. *Andary v. USAA Cas. Ins. Co.*, 1 N.W.3d 186, 192 (Mich. 2023) (quoting *Shavers*, 267 N.W.2d at 77).

The No-Fault Act requires automobile insurers to include PIP benefits in their policies. *See* Mich. Comp. Laws § 500.3101(2) (2019). PIP benefits cover "accidental bodily injury arising out of the…use of a motor vehicle." *Id.* § 500.3105(1) (1973). The benefits must "provide, at minimum, for payment of '[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care[,] recovery, or rehabilitation,' subject to exceptions." *Andary*, 1 N.W.3d at 193 (first alteration in original) (quoting Mich. Comp. Laws § 500.3107(1)(a) (2012) (amended 2019)).

In addition to requiring PIP benefits, the No-Fault Act serves as a "rule book" for how those benefits are awarded. *Rohlman v. Hawkeye-Sec. Ins. Co.*, 502 N.W.2d 310, 313 (Mich. 1993). For example, the No-Fault Act provides that certain categories of people are "excluded" from PIP benefits. From March 2017 to June 2019, one category excluded people from PIP benefits if they were (1) "not a resident of this state," and (2) "an occupant of a motor vehicle or motorcycle not registered in this state," when (3) "the motor vehicle or motorcycle was not insured by an insurer that has filed a certification" in compliance with the No-Fault Act. Mich. Comp. Laws § 500.3113(c) (2017) (amended 2019). In other words, until June 2019, out-of-state residents were

not excluded from PIP benefits if they were passengers in a vehicle that was registered and insured in Michigan.

**B.      William Cron's Insurance Policy with Home-Owners**

In May 2019, Home-Owners issued an automobile insurance policy to William Cron. The policy identified William Cron and Sharon Cron as the "insured" and listed four vehicles as the "item[s] insured." Insurance Policy, R.22-4 at PageID 208–13. Cron's policy was effective from May 2019 to May 2020.

In a section titled "No-Fault Insurance Endorsement," the policy described the PIP benefits that Home-Owners would provide in the event of an accident. The policy defined the scope of coverage as follows:

> Subject to the provisions of this endorsement and of the policy to which this endorsement is attached, we will pay personal injury protection benefits to or on behalf of an injured person for accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle, subject to the provisions of Chapter 31 of the Michigan Insurance Code. Ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle means that the involvement of the motor vehicle in the bodily injury was directly related to the transportation function of the motor vehicle.

*Id.* at PageID 230 (emphasis omitted). "Chapter 31 of the Michigan Insurance Code" refers to the No-Fault Act. *See Smejkal v. Beck*, No. 363394, 2024 WL 1684864, at *6 (Mich. Ct. App. Apr. 18, 2024) (per curiam) (noting that nearly identical contract language refers to "various statutory limitations set forth within the no-fault act").

On the final page of the "No-Fault Insurance Endorsement," the policy described how the No-Fault Act affected the coverage that Home-Owners was obligated to provide:

> The premium for the coverages and the limits of liability of the policy have been established in reliance upon the provisions of Chapter 31 of the Michigan Insurance Code. … [P]rovisions of the policy that have been established in reliance upon Chapter 31 of the Michigan Insurance Code shall be voidable and shall revert to conform to applicable provisions of Chapter 31 at the time of the accident.

Insurance Policy, R.22-4 at PageID 235.

### C.     Amendments to the No-Fault Act

On June 11, 2019—twelve days after Home-Owners issued the insurance policy to Cron—the Michigan legislature made "sweeping changes" to the No-Fault Act. *Andary*, 1 N.W.3d at 193. The amendments to the No-Fault Act were intended to control the rising costs of automobile insurance. *Demske v. Fick*, No. 362739, 2024 WL 1685069, at *4 (Mich. Ct. App. Apr. 18, 2024) (per curiam) (citing *Andary*, 1 N.W. 3d at 191). Two changes are central to this case.

First, the amended No-Fault Act provides that "[a]n insurer…is *not required* to provide [PIP benefits] for accidental bodily injury…arising from the…use of a motor vehicle as a motor vehicle by an out-of-state resident who is insured under the insurer's automobile liability insurance policies," unless the out-of-state resident has a vehicle that is registered and insured in Michigan. Mich. Comp. Laws § 500.3163 (2019) (emphasis added). Prior to the 2019 amendments, insurers were required to certify that out-of-state residents who were insured *would* receive PIP benefits under their policies. *See id.* § 500.3163 (2003) (amended 2019).

Second, the amendments modified the categories of people who are excluded from PIP benefits. After the June 2019 amendments, a person is "*not entitled* to be paid [PIP benefits] if at the time of the accident…[t]he person was not a resident of this state, unless the person owned a motor vehicle that was registered and insured in this state." *Id.* § 500.3113(c) (2019) (emphasis added). Unlike the prior version of § 500.3113, out-of-state residents are now categorically excluded from receiving PIP benefits unless they owned a vehicle that was registered and insured in Michigan.

### D.     Car Accident and Subsequent Coverage

On July 22, 2019—six weeks after the No-Fault Act amendments took effect—Herbert and Marian Boxer were passengers in Cron's car. At that time, the Boxers were residents of Colorado. They did not own a vehicle registered in Michigan, and they did not have an insurance policy under the No-Fault Act. *See id.* § 500.3101 (2019). While driving through Michigan, Cron's car

4

collided head-on with a vehicle traveling the opposite direction. The Boxers suffered serious injuries, and they sought to recover PIP benefits from Home-Owners.

Home-Owners soon informed the Boxers that they did not qualify for PIP benefits. In their letter denying coverage, Home-Owners cited (1) the amended Mich. Comp. Laws § 500.3163, (2) the amended Mich. Comp. Laws § 500.3113(c), and (3) the "Constitutionality" section of Cron's insurance policy, which provided that references to the No-Fault Act in the policy "shall revert to conform to applicable provisions of [the No-Fault Act] at the time of the accident." Coverage Position Letter, R.22-8 at PageID 274–75. Home-Owners told the Boxers that they should pursue their claim through their own insurance policy.

In September 2019, the Michigan Department of Insurance and Financial Services (DIFS) issued an order that prevented insurers from using the No-Fault Act amendments to change the coverage of "existing, in-force policies." 2019 DIFS Order, R.22-5 at PageID 263. Insurers were also prohibited from relying on "conformity to law clauses" in existing policies to incorporate the No-Fault Act amendments that affected the scope of coverage. *Id.* at PageID 265. Instead, insurers were required to submit revised forms and rates for DIFS approval.

In response to the DIFS order, Home-Owners sent a "Reservation of Rights" letter to the Boxers. The letter stated that the Boxers would receive coverage because of DIFS's interpretation of the No-Fault Act. Home-Owners then clarified that if the DIFS order was later reversed, the Boxers would no longer have coverage under Cron's policy, and they would be required to reimburse Home-Owners.

In July 2021, DIFS issued a memorandum that rescinded its 2019 order.

## E.     Procedural History

Home-Owners initiated this lawsuit in February 2022. The complaint sought a declaratory judgment that the Boxers were not entitled to PIP benefits; Home-Owners did not seek to recover prior PIP benefits already paid to the Boxers. *See* 28 U.S.C. § 2201(a). In short, Home-Owners'

complaint alleged that the Boxers are not entitled to PIP benefits because at the time of the accident, they were out-of-state residents who did not own and insure a vehicle in Michigan.

The parties consented to have the matter decided by a magistrate judge. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Home-Owners subsequently filed a motion for summary judgment. In response, the Boxers argued that an insurer may provide broader coverage than what is required under the No-Fault Act and that the "unequivocal language" of Cron's insurance policy provided PIP benefits to "an injured person for accidental bodily injury." The Boxers also cited the doctrines of promissory and equitable estoppel, as Cron and the Boxers purportedly "relied upon" the alleged promise by Home-Owners to pay PIP benefits. In supplemental briefing, the Boxers further argued that retroactively applying the No-Fault Act amendments to an existing contract would violate the contracts clause of the Michigan Constitution. *See* Mich. Const. art. 1, § 10.

The district court granted Home-Owners' motion for summary judgment. First, the court held that the 2019 DIFS order—which prevented Home-Owners from relying on "conformity to law clauses"—was "considered never to have existed" because DIFS rescinded the order in 2021.[1] Dist. Ct. Op. & Order, R.37 at PageID 537. Second, the court found that Home-Owners was not estopped from denying coverage to the Boxers, as Home-Owners issued a "reservation of rights" letter to the Boxers shortly after the 2019 DIFS order. Third, the court concluded that because the coverage provision of Cron's policy was "subject to" the No-Fault Act, the amended statute controlled the scope of the policy.

The Boxers timely appealed.

---

[1] On appeal, Home-Owners spends a considerable portion of their brief arguing that the 2019 DIFS order was legally erroneous. But in their reply brief, the Boxers note that the DIFS order "has little, if anything, to do with this case." Thus, we consider any argument about the applicability of the 2019 DIFS order to be waived on appeal. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

**II.**

We review the district court's grant of summary judgment, including the district court's interpretation of contracts and state statutes, de novo. *Hinman v. ValleyCrest Landscaping Dev., Inc.*, 89 F.4th 572, 574 (6th Cir. 2024); *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 421 (6th Cir. 2008). We must affirm where there is no genuine dispute of any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

**A.      The Scope of Cron's Insurance Policy**

On appeal, the Boxers argue that the district court over-emphasized the No-Fault Act amendments and gave "short shrift" to the language of Cron's insurance policy. In their view, the policy provides broader coverage than what the No-Fault Act requires, and the Boxers fall squarely within the policy's terms.

We begin by accepting the premise of the Boxers' argument: insurance contracts can provide more coverage than what is required under the No-Fault Act. PIP benefits "have both statutory and contractual characteristics." *Andary*, 1 N.W.3d at 200. An insurance policy "may provide broader coverage than that mandated by the no-fault act, even with respect to a mandated coverage such as PIP benefits." *Mapp v. Progressive Ins. Co*., No. 359889, 2023 WL 3131948, at *8 (Mich. Ct. App. Apr. 27, 2023), *appeal denied*, 1 N.W.3d 259 (Mich. 2024). When the coverage is required by the No-Fault Act, then the scope of coverage is governed by statute. *See Bronson Health Care Grp., Inc. v. State Auto Prop. & Cas. Ins. Co.*, 948 N.W.2d 115, 118 (Mich. Ct. App. 2019). But when an insurance policy provides non-mandatory coverage, then the language of the policy controls. *See Rohlman*, 502 N.W.2d at 313.

Both parties agree that, after the No-Fault Act amendments, insurers are generally "not required" to provide PIP benefits to out-of-state passengers who are injured in an accident. Mich. Comp. Laws § 500.3163 (2019). As a result, the Boxers do not contend that they have a statutory

7

right to PIP benefits. Instead, they rely solely on Cron's insurance policy with Home-Owners. So, to determine if the Boxers are entitled to PIP benefits at all, we must turn to the language of the policy.

Insurance policies are subject to the same principles of construction as any other contract. *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 26 (Mich. 2005). Michigan courts "read contracts as a whole, giving harmonious effect, if possible, to each word and phrase." *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 781 n.11 (Mich. 2003). This is done to "avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 453 (Mich. 2003).

Cron's insurance policy provided that Home-Owners "will pay [PIP benefits] to or on behalf of an injured person for accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle, subject to the provisions of [the No-Fault Act]." The Boxers note that the policy broadly refers to "an injured person." But Home-Owners points out that an injured person's right to PIP benefits is "subject to" the No-Fault Act.

What does it mean for a contractual right to be "subject to" a statute? The district court answered this question by citing the Michigan Court of Appeals:

> The phrase "subject to" means "subordinate" to and "governed or affected by." Black's Law Dictionary (6th ed). In other words, the phrase is "introduc[ing] a subordinate provision," indicating that the proposition set forth before the phrase can be superseded by a contrary provision in Chapter 31. Garner's Dictionary of Legal Usage (3rd ed), p 616. Thus, if Chapter 31 does not override the provision, then coverage is owed if the conditions listed are satisfied.

Dist. Ct. Op. & Order, R.37 at PageID 540–41 (alteration in original) (quoting *Carson v. Home Owners Ins. Co.*, No. 308291, 2014 WL 1510039, at *3 (Mich. Ct. App. Apr. 15, 2014) (per curiam)). In the context of statutory interpretation, Michigan courts define the phrase "subject to" as "dependent upon." *See S. Dearborn Env't Improvement Ass'n, Inc. v. Dep't of Env't Quality*, 917 N.W.2d 603, 610 (Mich. 2018) (citing *Mayor of Lansing v. Mich. Pub. Serv. Comm'n*, 680

N.W.2d 840, 844 (Mich. 2004)). When one provision is "subject to" another, they must be "read together, not in isolation." *Id.*; *see also Mich. Head & Spine Inst., PC v. Mid-century Ins. Co.*, No. 357144, 2022 WL 2182329, at *4 (Mich. Ct. App. June 16, 2022) (per curiam), *appeal dismissed*, 985 N.W.2d 192 (Mich. 2023) ("[E]ntitlement to, and payment of, PIP benefits is governed by statute, not by the insurance contract. This is embodied in the insurance policy itself, which expressly states that liability for PIP benefits is 'subject to the provisions of [the no-fault act].'" (second alteration in original) (citation omitted)).

In light of this definition, Cron's insurance policy provides PIP benefits to "an injured person" who was a passenger in Cron's car, "dependent upon" any limitations or exclusions provided by the No-Fault Act. The Boxers argue that the amended No-Fault Act does not limit Home-Owners' coverage, as Mich. Comp. Laws § 500.3163 does not contain any limitations or exclusions. In their view, that statute "does not forbid non-resident passenger coverage; instead, it is no longer mandatory."

That may be true, but that's not the statute that matters. The key statute is Mich. Comp. Laws § 500.3113(c). Before the 2019 amendments, § 500.5113(c) provided that passengers were "not entitled" to PIP benefits if they were out-of-state residents and occupied a vehicle that was neither registered in Michigan nor insured in compliance with the No-Fault Act. Mich. Comp. Laws § 500.3113(c) (2017) (amended 2019). After the amendments, however, out-of-state residents are categorically "not entitled" to PIP benefits unless they owned a vehicle that was registered and insured in Michigan. Mich. Comp. Laws § 500.3113(c) (2019). The Boxers fail to even mention § 500.3113(c), let alone explain which version of the statute is relevant to this case. Nevertheless, the critical question is whether the contract is "subject to" the No-Fault Act as it existed when the contract was formed (i.e., pre-amendments), or whether it is "subject to" the No-Fault Act at the time of the accident (i.e., post-amendments).

The contract answers that question too. Cron's policy explicitly provides that (1) "the limits of liability of the policy have been established in reliance upon the provisions of [the No-Fault Act]," and (2) "provisions of the policy that have been established in reliance upon [the No-Fault Act] shall be voidable and shall revert to conform to applicable provisions of [the No-Fault Act] *at the time of the accident*." Insurance Policy, R.22-4 at PageID 235 (emphasis added). In other words, whether the Boxers are entitled to PIP benefits from Home-Owners is dependent upon the exclusions in the No-Fault Act, and the exclusions in the No-Fault Act are determined by when the Boxers were injured.

The "revert to conform" provision aligns with how Michigan courts interpret insurance policies. When an insurance policy is "directed by" the No-Fault Act, the policy's language "should be interpreted in a consistent fashion, which can only be accomplished by interpreting the statute." *Rohlman*, 502 N.W.2d at 315. Moreover, the Michigan Supreme Court recently affirmed that "the scope of available PIP benefits under an insurance policy vests at the time of injury." *Andary*, 1 N.W.3d at 204. Even assuming that the Boxers were third-party beneficiaries to Cron's insurance policy, their rights under the policy could not vest until the time of the accident, which was after the No-Fault Act amendments took effect—when they were not entitled to PIP benefits.

The Boxers' counterarguments are unavailing. First, they argue that contracts incorporate the law as it existed when the contract was formed, so Cron's policy incorporated the No-Fault Act before it was amended. *See LaFontaine Saline, Inc. v. Chrysler Grp., LLC*, 852 N.W.2d 78, 84 (Mich. 2014) (quoting *Crane v. Hardy*, 1 Mich. 56, 62–63 (1848)); *Von Hoffman v. City of Quincy*, 71 U.S. 535, 550 (1867). If this default rule of construction applied, we would have to determine whether Michigan insurance contracts incorporate the No-Fault Act at the time of

formation (i.e., when the contract is executed) or at the time when the claimant's rights vest (i.e., when the claimant is injured).[2]

But a contract can supply a rule of construction that overrides the default rule. *See Mazur v. Young*, 507 F.3d 1013, 1017 (6th Cir. 2007) (citing Restatement (Second) of Contracts § 5 cmt. b (Am. L. Inst. 1981)). And that's exactly what happened here. The policy specifically noted that provisions "established in reliance" on the No-Fault Act "shall be voidable and shall revert to conform" to the No-Fault Act as it existed at the time of the accident. The Boxers fail to adequately explain—or explain at all—why this provision does not supplant the default rule on which they rely.

Second, the Boxers note that in addition to being "subject to" the No-Fault Act, the policy's coverage for "an injured person" is also "[s]ubject to the provisions of this endorsement and of the policy to which this endorsement is attached." In their view, this means that changes to the No-Fault Act must be "subordinate" to the insurance policy. But rather than construct an arbitrary hierarchy of clauses, we find a simpler way to read this provision: the broad coverage for "an injured person" is limited by *both* the insurance policy and the No-Fault Act. For example, the policy states that Home-Owners will not provide PIP benefits to "an injured person" if they intentionally injured themselves. Or if the person has their own no-fault insurance policy. Or if the person occupied a vehicle that was used as a residence. The No-Fault Act simply provides additional limitations, including the provision that out-of-state residents are not entitled to PIP benefits.

---

[2] The Michigan Supreme Court declined to answer this question and acknowledged that it presents a "conundrum." *Andary*, 1 N.W.3d at 205. The majority opinion acknowledged that "a factual scenario where the law changed between the time an insurance policy was issued and the injury or loss occurred could raise questions about what law governs." *Id.* Justice Viviano similarly noted that "[i]t is not entirely clear whether the majority believes the statutory law becomes fixed at the time the contract is entered or when rights vest under the contract." *Id.* at 240 n.24 (Viviano, J., concurring in part and dissenting in part).

Third, the Boxers claim that the phrase "subject to [the No-Fault Act]" is ambiguous, and thus should be construed against Home-Owners. *See Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 455 (6th Cir. 2003). While ambiguities are construed in favor of the insured, "this does not mean that the plain meaning of a word or phrase should be perverted, or that a word or phrase…should be given some alien construction merely for the purpose of benefitting an insured." *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 194 (Mich. 1999). Courts are not permitted to "simply ignore portions of a contract…in order to declare an ambiguity." *Klapp*, 663 N.W.2d at 453. The natural reading of Cron's insurance policy is that (1) whether an injured person is entitled to PIP benefits is "dependent upon" the No-Fault Act, (2) the version of the No-Fault Act at the time of the accident governs, and (3) at the time of the accident, out-of-state residents were not entitled to PIP benefits. The Boxers have failed to offer another reasonable interpretation that "give[s] effect to every word, phrase, and clause" of the policy. *Id.*

## B.       Promissory and Equitable Estoppel

The Boxers also claim that Home-Owners is obligated to provide PIP benefits "under principles of promissory estoppel and equitable estoppel." The district court held that Home-Owners was not estopped from denying coverage because it issued the "Reservation of Rights" letter to the Boxers within a reasonable time after the 2019 DIFS Order. But on appeal, the Boxers argue that while the No-Fault Act amendments may have changed the scope of coverage in Cron's policy, Home-Owners did not notify Cron of this change *before* the accident. Thus, the Boxers conclude, Home-Owners is estopped from denying coverage that was promised to Cron in the policy. As explained below, neither promissory nor equitable estoppel apply here.

Promissory estoppel consists of four elements: "(1) a promise, (2) that the promisor should reasonably have expected to induce action…on the part of the promisee, (3) which in fact produced reliance or forbearance of that nature, (4) in circumstances such that the promise must be enforced if injustice is to be avoided." *Leila Hosp. & Health Ctr. v. Xonics Med. Sys., Inc.*, 948 F.2d 271,

275 (6th Cir. 1991) (quoting *McMath v. Ford Motor Co.*, 259 N.W.2d 140, 142 (Mich. Ct. App. 1977)). The doctrine should be "cautiously applied," and its "sine qua non…is a promise that is definite and clear." *Marrero v. McDonnell Douglas Cap. Corp.*, 505 N.W.2d 275, 278 (Mich. Ct. App. 1993); *see also Gason v. Dow Corning Corp.*, 674 F. App'x 551, 559 (6th Cir. 2017). The facts must be "unquestionable" and the wrong to be avoided must be "undoubted." *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 552 (Mich. Ct. App. 1999).

Even if we assume that the Boxers can raise a promissory estoppel claim as potential third-party beneficiaries of an insurance contract between Home-Owners and Cron, their argument fails to address the key provisions of the policy. The policy's coverage was explicitly "subject to" the No-Fault Act, and the "revert to conform" clause put Cron on notice that the No-Fault Act may provide additional (or fewer) exclusions than at the time his policy began. In short, there is no "injustice" in interpreting the policy by its own terms. Cron was "obligated to read his…insurance policy and raise any questions about the coverage within a reasonable time after the policy [was] issued." *Casey v. Auto Owners Ins. Co.*, 729 N.W.2d 277, 283 (Mich. Ct. App. 2006) (per curiam).

The Boxers' equitable estoppel claim fares no better. Equitable estoppel applies "where a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, the other party justifiably relies and acts on that belief, and the other party will be prejudiced if the first party is allowed to deny the existence of those facts." *Van v. Zahorik*, 597 N.W.2d 15, 22 (Mich. 1999). In the context of insurance policies, the doctrine serves to "prevent[] one party to a contract from enforcing a specific provision contained in the contract." *Morales v. Auto-Owners Ins. Co.*, 582 N.W.2d 776, 779 (Mich. 1998).

Here too, there is no act or omission by Home-Owners that led Cron or the Boxers to believe facts that Home-Owners would later deny. In fact, Home-Owners' first letter to the Boxers stated that the Boxers were *not* entitled to PIP benefits, citing to both the relevant policy provisions and Mich. Comp. Laws. § 500.3113(c). The change in coverage was caused by the No-Fault Act

amendments, not any action by Home-Owners. Thus, Home-Owners is not estopped from enforcing the clear terms of the policy. *See Conagra, Inc. v. Farmers State Bank*, 602 N.W.2d 390, 405–06 (Mich. Ct. App. 1999) (noting that a party to a contract does not have a duty to inform the other party of the contract's terms).

## C.      Contracts Clause of the Michigan Constitution

The Boxers' final argument is that applying the No-Fault Act amendments to Cron's existing insurance policy would violate the contracts clause of the Michigan Constitution. The contracts clause, which resembles its federal counterpart, prohibits the state from enacting a law "impairing the obligation of contract." Mich. Const. art. 1, § 10. But there are two reasons why our reading of Cron's insurance policy does not raise constitutional concerns.

First, the contracts clause is inapplicable because the Boxers had no vested contract rights when the No-Fault Act amendments took effect. The contracts clauses of the Michigan Constitution and the U.S. Constitution are interpreted similarly. *See Borman, LLC v. 18718 Borman, LLC*, 777 F.3d 816, 824 (6th Cir. 2015) (citing *Att'y Gen. v. Mich. Pub. Serv. Comm'n*, 642 N.W.2d 691, 698 (Mich. Ct. App. 2002)). When assessing a claim under the contracts clause, the first step is to determine "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978). But at this step, courts only consider whether the law impaired *vested* contract rights. *See, e.g.*, *Campbell v. Mich. Judges Ret. Bd.*, 143 N.W.2d 755, 757 (Mich. 1966) ("Vested rights acquired under contract may not be destroyed by subsequent State legislation or even by an amendment of the State Constitution."); *LaFontaine Saline*, 852 N.W.2d at 86 (noting that whether a statute affects existing contracts depends on whether it "takes away or impairs vested rights acquired under existing laws" (quoting *Hughes v. Judges' Ret. Bd.*, 282 N.W.2d 160, 163 (Mich. 1979))); *Kia Motors Am., Inc. v. Glassman Oldsmobile Saab Hyundai, Inc.*, 706 F.3d 733, 740 (6th Cir. 2013) (same); *Aguirre v. State*, 891 N.W.2d 516, 523 (Mich. Ct. App. 2016) (per curiam)

(recognizing that the federal and state constitutions "provide that vested rights acquired under a contract may not be destroyed by subsequent state legislation" (quoting *Seitz v. Prob. Judges Ret. Sys.*, 474 N.W.2d 125, 130 (Mich. Ct. App. 1991))).

Even if the Boxers had contractual rights under Cron's insurance policy, those rights did not vest until the accident on July 22, 2019. In Michigan, an individual's right to PIP benefits under a no-fault insurance policy vests "when their injuries occurred and they first [become] eligible for PIP benefits." *Andary*, 1 N.W.3d at 205; *see also Clevenger v. Allstate Ins. Co.*, 505 N.W.2d 553, 558 (Mich. 1993). Moreover, Michigan law provides that a third-party beneficiary's rights under a contract vest "the moment the promise becomes legally binding on the promisor." Mich. Comp. Laws. § 600.1405(2)(a) (1963). But when the beneficiary is not immediately ascertainable, then the beneficiary's rights vest "the moment he comes into being or becomes ascertainable." *Id.* § 600.1405(2)(b) (1963). The Boxers could not be third-party beneficiaries to Cron's insurance policy, even theoretically, unless and until they were injured while they were passengers in Cron's car. And because the Boxers' contract rights could not have vested until after the No-Fault Act amendments took effect, they cannot claim that the legislation impaired their existing contract rights.

Second, the No-Fault Act amendments could not impair any rights under Cron's policy because the policy was explicitly "subject to" the No-Fault Act. As described above, Cron's policy provided that Home-Owners would provide PIP benefits to "an injured person," dependent upon any exclusions or limitations in the No-Fault Act. The policy further stated that provisions "established in reliance" on the No-Fault Act "shall revert to conform" to the No-Fault Act as it existed at the time of the accident. In short, the Boxers claim that the No-Fault Act amendments impair the rights provided by Cron's policy, even though the rights provided by Cron's policy are expressly limited by the No-Fault Act. That argument does not pass muster, and their constitutional challenge fails.

## III.

We **AFFIRM** the district court's judgment.